ATKINSON v. HANCOCK & CO. ET AL.

1. **Homestead:** EXCHANGE: LIABILITY OF NEW ONE FOR FORMER DEBT. When one exchanges an old homestead for a new one of greater value, the new one, to the extent of such excess in value, may be subjected to the payment of a judgment against the owner procured prior to the exchange; but the difference in value in such case must be estimated at the time of the exchange, and not afterwards.

2. **Judgment against Holder of Naked Title:** NO LIEN ON THE LAND. Where the legal title to land passes through a judgment debtor as a mere conduit, he having no interest in the land, the judgment does not attach thereto as a lien.

*Appeal from Palo Alto Circuit Court.*

THURSDAY, DECEMBER 10.

ACTION IN EQUITY. The plaintiff claims to be the owner of lots 1, 2, 9 and 10, in block 55, in the town of Emmets-

burg. The defendants Hancock & Co. own a judgment againt one Cummins, which is claimed to be a lien on said lots. The court found for the defendants as to lot 2, and for the plaintiff as to the other lots, and a decree was accordingly entered. Both parties appeal. The defendants, however, took the first appeal, and therefore are regarded as the appellants.

*John Jenswold, Jr.*, for appellants.

*Soper, Crawford & Carr*, for appellee.

SEEVERS, J.—I. In 1872, T. Cummins was the head of a family, and became the owner of a lot in the old town of Emmetsburg, on which there was a house, and the said premises were occupied by Cummins as his homestead. In 1873, Hancock & Co. obtained a judgment against Cummins, but it is not claimed that this judgment became a lien on the premises above described. In 1875, Cummins exchanged his old homestead for a new homestead in the new town of Emmetsburg. The conceded fact seems to be that, because of the location of a railroad through Palo Alto county, the location of the old town was not deemed desirable, and, by mutual agreement between the proprietors of the new and citizens of the old town, the latter agreed to move their buildings from the old to the new town, provided a lot in the latter was given to each of them. In accordance with this arrangement, the lot now in controversy was conveyed to Cummins, and he moved thereon his house from the old town, and thereafter occupied it as his homestead, until he sold and conveyed it to a person under whom the plaintiff claims.

1. HOMESTEAD: exchange: liability of new one for former debt.

The defendants do not dispute the homestead character of lot 1, but they say it is of greater value than the old homestead, and that, to the extent of such excess, it should be subjected to the payment of the judgment. Under the evidence this

position cannot be sustained.   The old homestead, that is, the lot, was exchanged for lot 1, and the same buildings that were on the former were moved to and placed on lot 1.   At the time the removal took place there was not much difference in the value of the two parcels of land.   The evidence tends to show that the lot in the old town was not worth more than $15, and we think the evidence shows that lot 1 was not worth, at the time it was conveyed to the plaintiff, more than $25.   The buildings were probably worth more prior to removal than afterwards, as the evidence shows that they were to some extent damaged in removing them.   The difference in value of the two premises at the time of the exchange was insignificant and largely speculative.   The old homestead is now a part of a farm, and the new is in a flourishing town, and has increased in value; but this we think is immaterial.   The value of the new homestead at the time it became such is the test, and we are unable to find, under the evidence, that there was at that time any material difference in value between the old and new homesteads.

II.   At the same time, or nearly so, that the exchange of homesteads was made, Cummins purchased lot 2, and paid $25 therefor.   The plaintiff claims that this lot became and was a part of the new homestead.   But we think this claim cannot be sustained.   The old homestead was exchanged for lot 1.   The purchase of lot 2 was a separate transaction; and if it should be regarded, by reason of its location and the intention to use it, as a part of the homestead, it would still be liable to the judgment, because in such event we think the value of the new would exceed the value of the old homestead, and, besides this, lot 2 was purchased after the judgment was rendered, and no part of the proceeds of the old homestead was invested in lot 2, and therefore it became liable to the lien of the judgment, of which the plaintiff had constructive notice at the time he purchased said lot.

III.   One Lawler was the owner of lots 9 and 10.   He was a non-resident, and T. W. Harrison was his agent.   Mr.

2. JUDGMENT against holder of naked title: no lien on the land. Cummins purchased these lots of Harrison as the agent for Lawler. The price was $25 each. Harrison wrote to Lawler for a deed, and it was executed, and sent to Harrison. Cummins was the grantee therein. Harrison testified that Cummins paid the purchase money, and the deed was delivered to him. On the other hand, Cummins testifies that he informed Harrison that he could not pay for the lots, but that he had arranged to let one Slead have them at the same price he had agreed to pay, and he requested Harrison to return to Lawler the deed to him, and get a deed to Slead. This Harrison declined to do, as Cummins testifies, and thereupon Slead paid the purchase price to Harrison, and the deed was delivered to him, and thereupon Cummins conveyed the lots to Slead, under whom the plaintiff claims. The evidence of Cummins is to a considerable extent corroborated by that of Slead. But if it be conceded that Cummins paid the purchase money to Harrison, and the deed was delivered to him, the fact remains that the money so paid belonged to Slead, and that the payment was made for the purpose of vesting the title to the lots in the latter. Cummins was, it is true, vested with the naked legal title. The conveyance was made to him as a matter of convenience. He was a mere conduit, and held the legal title in trust for Slead. Under such circumstances Cummins had no interest on which the judgment became a lien. His creditors can only get what he had, and what he had was of no pecuniary value. *Blaney v. Hanks*, 14 Iowa, 400.

The result is that the judgment of the district court must on both appeals be

AFFIRMED.