(88 N. W. Rep. 1037.)

---

## OLIVER C. DALRYMPLE *vs.* SECURITY IMPROVEMENT COMPANY.

---

**Homestead Exemption.**

> Under the laws of this state the statutory homestead is exempt from judgment liens and forced sales, save as to certain debts expressly excepted by the statute, so long as the property retains

its homestead character, and an incumbrance or alienation of the same does not constitute a fraud upon the judgment creditors of the holder of the title.

### Judgment Not Lien Against Legal Owner.

Judgments become liens upon real estate only to the extent of the interest of the judgment debtor, and when the judgment debtor has the bare legal title, without interest, and the equitable title is in another, the lien, in equity, does not attach.

### Judgment Lien Subject to Prior Contract.

The lien of a judgment entered against the vendor of real estate after a contract of sale, and before the execution and delivery of a conveyance to the vendee, is subject to such contract. It may be made effective against such portions of the purchase price as remain unpaid. When the entire purchase has been paid or the same is due to another than the vendor, no lien attaches.

### Quieting Title.

It is *held*, on the facts stated in the opinion, that the judgments owned by the several defendants do not constitute liens upon the real estate in controversy in this action, and that the trial court properly quieted title in plaintiffs.

Appeal from District Court, Cass County; *Lauder, J.*

Action by Franklin S. Dalrymple and others, by Oliver C. Dalrymple, their guardian, against the Security Loan & Trust Company of Casselton and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

*Pollock & Scott* and *Morrill & Engerud,* for appellants.

*Newman, Spalding & Stambaugh,* for respondents.

YOUNG, J. Action to quiet title and to determine adverse claims to real estate, and for other relief. The property in controversy consists of a house and two lots situated in the city of Casselton, and formerly occupied by O. C. Dalrymple and Isabella C. Dalrymple, his wife, as the family homestead. The fee title to the real estate in question was in Isabella C. Dalrymple from March 7, 1883, until May 3, 1891, during all of which time it constituted the family residence of herself and husband and their children. On the last-named date Isabella C. Dalrymple died intestate, leaving as her only heirs her husband, O. C. Dalrymple, and four minor children, one of whom has since died. The plaintiff's herein are the three surviving children. Seven of the defendants are judgment creditors of O. C. Dalrymple, and claim that their judgments constitute liens upon the property involved in this litigation. The Security Loan & Trust Company has an unsatisfied mortgage upon the premises, which, however, concededly, has been paid. Sales were made under executions issued on two of the aforementioned judgments, and sheriff's certificates were issued to the judgment creditors, who were purchasers at the sales. H. G. Scott, the remaining defendant, is in

possession of the premises under a lease made by O. C. Dalrymple as guardian of the minor children. The trial court found that the entire legal and equitable title to the premises in controversy was vested in the plaintiffs, and entered judgment quieting title in them as against all claims, estates, liens or interests of the defendants, and decreeing a cancellation of the mortgage standing unsatisfied in the name of the Security Loan & Trust Company, and the two sheriff's certificates issued on the sales made under the judgments, and adjudging that the defendant H. G. Scott holds the premises as a tenant of these plaintiffs. The defendants have appealed from the judgment, and in a settled statement of the case, containing all of the evidence offered at the trial have demanded a review and retrial of the entire case in this court.

The real question in controversy is whether the judgments against Oliver C. Dalrymple constitute liens upon the property in question. It is agreed that under § 3742, Rev. Codes 1899, relating to the order of succession to the estates of intestates, the title to the property in question, upon the death of Isabella C. Dalrymple, on May 3, 1891, descended one-third to her surviving husband, Oliver C. Dalrymple, and the remainder to her four minor children, three of whom are plaintiffs in this action. The defendants concede that the plaintiffs are the owners on an undivided three-sixths of the property in question, unincumbered by the liens on the judgments, but contend that such judgments are liens upon the one-third which O. C. Dalrymple inherited, and also the one-sixth interest which descended to the fourth child, now deceased; the father being the sole heir of such deceased child. Section 3742, supra. In other words, defendants contend that the plaintiffs and their father, Oliver C. Dalrymple were tenants in common, and that their judgments become liens upon the interest of Oliver C. Dalrymple. The plaintiffs, on the other hand, deny that the judgments are or ever were liens upon the property in question, and contend that, by virtue of certain conveyances to which we will hereafter refer, they are vested with the entire title, both legal and equitable, to said premises.

The facts essential to a determination of the questions presented by this appeal may be stated as follows: Isabella C. Dalrymple was the owner not only of the property here in controversy, but also of other real estate, consisting of farm lands. Her husband was indebted to the Cass County Bank in a considerable sum. On October 3, 1889, she joined her husband in a conveyance of the property here involved to said bank, and at the same time conveyed to said bank farm lands to the amount 1,440 acres. The several conveyances were in form quitclaim deeds, but were given for the purpose of security only, and were, in legal effect, mere mortgages. After the death of Isabella C. Dalrymple, as before stated, her surviving husband continued to occupy the premises here in question, with the minor children, as their homestead, until about November, 1894. On April 24, 1893, which was subsequent to his wife's death, and prior

to the abandonment of the homestead, Oliver C. Dalrymple had a settlement and accounting with the Cass County Bank, at which the amount of his indebtedness secured by the conveyances before mentioned was fixed at the sum of $21,248.64. It is agreed that the property covered by the bank's mortgages did not exceed the value of $16.500, and it is further conceded that O. C. Dalrymple was then, and has since been, insolvent. On said last-named date a written contract was entered into between O. C. Dalrymple and said bank which provided for a transfer to said bank of both the possession and title to all of the property covered by the bank's mortgages, including not only the interest of Oliver C. Dalrymple, but also that of the four minor heirs. This contract, after describing the several conveyances executed by the deceased, Isabella C. Dalrymple, to the bank, and the amount of the then existing indebtedness, among other things, recites that: "Whereas, Isabella C. Dalrymple * * * has died, leaving as her heirs and next of kin Oliver C. Dalrymple * * * and four children [naming them], and a foreclosure of the deeds becomes necessary in order to give said Cass County Bank an absolute title in fee to said premises, and it being by all the parties deemed advisable for said bank to take such title in fee: Now, therefore, in consideration of these premises, and the sum of one dollar in hand paid to said Oliver C. Dlrymple, it is now mutually agreed as follows: Said Oliver C. Dalrymple shall at once secure from the county court of Cass county letters of guardianship over the persons and property of the minor heirs of Isabella C. Dalrymple, deceased, to the end that the bank can make proper and legal service of the foreclosure proceedings upon him as such guardian. * * *" The contract, in substance, further provides that (2) Said Cass County Bank will at once bring an action or actions to foreclose the deeds above described, claiming to be due on this date the amount heretofore agreed to be due, to-wit, $21,248.64. Said Oliver C. Dalrymple agrees to answer at once, admitting the claim of the said bank, and consenting that judgment be entered forthwith against him. (3) Dalrymple, on his part, further agrees to give a bill of sale of all personal property on which the bank has a chattel mortgage, and to permit said bank to take immediate possession thereof, and sell and dispose of the same. Further, that said bank should have full and complete possession of all the real estate covered by the mortgages, with power to sell the same as it sees fit, without any liability to account for rents or profits arising from such sale, excepting therefrom lots 3 and 4 in block 20 in the city of Casselton, which is the property here in controversy. (4) The bank, on its part, agreed to permit said Dalrymple to take possession and control of the homestead, and to have and use the same as his own, free from all rent charges. Said bank further agreed that, at the time "of getting its title perfected by foreclosure proceedings to the other land above described, to convey by special warranty deed, free and clear of all incumbrances, said lots 3 and 4,

block 20, to said Oliver C. Dalrymple, or such other person as he shall designate." (5) The bank further agreed that it would keep the buildings on the homestead insured in the sum of not less than $1,500, and, in case of loss by fire prior to the conveyance of said lots to the said Oliver C. Dalrymple, moneys received therefor should be paid to said Oliver C. Dalrymple, in addition to conveying him said lots. (6) The bank further agreed that after said Dalrymple had been appointed guardian of said children, and had served his answer as agreed, admitting the amount of the bank's indebtedness, to pay to him the sum of $1,000 in full payment of all matters between them, and to cancel and surrender all obligations, including notes, mortgages, and judgments, held by it against him, and to give a receipt in full for all claims and demands of every kind and nature. The contract contains this further recital: "To this end said Oliver C. Dalrymple agrees to treat this transaction made this day as a full and final settlement between them, and guarantees that, as far as he and his heirs are concerned, they will neither ask nor demand of said bank any of said land or personal property above described, except the homestead lots described as lots 3 and 4, block 20, First addition to Casselton, hereinbefore provided to be conveyed by said bank to Oliver C. Dalrymple, and the following articles of personal property." Here follows the description of certain personal property which was released to said Dalrymple, free and clear of all liens or mortgages held by the bank.

It is conceded that the stipulations contained in the foregoing contract were fully performed, both on the part of the Cass County Bank and on the part of Dalrymple. The bank foreclosed its several mortgages by actions in which Dalrymple and the four minor children were made parties defendant. Judgment was obtained by default, and all of the property covered by the mortgages, including the property here in question, was sold under said judgment on January 29, 1895; the bank being the purchaser at the sale. No redemption was made, and on the 3d day of April, 1896, a sheriff's deed was issued to the bank for all said property including the lots here in question. The property here involved stood in the name of the bank until April 8, 1896, on which date, at the request of O. C. Dalrymple, it was conveyed by warranty deed to John C. Dalrymple, an uncle of the minor children of Isabella C. Dalrymple, who had been appointed in the state of Pennsylvania as guardian of the estate of said minors in that state. On the 13th day of April, 1897, John C. Dalrymple made, executed, and delivered to one J. M. Smith a quitclaim deed of the premises here in question, which deed purported, in terms, to convey to him said property as trustee, and for the use and benefit of the minor children of Isabella C. Dalrymple.

This case was before this court upon two former appeals, upon demurrers to the complaint. *Smith v. Trust Co.,* 8 N. D. 451, 79 N. W. Rep. 981; *Dalrymple v. Trust Co.,* 9 N. D. 306, 83 N. W. Rep. 245. It was determined on such appeals that upon the facts alleged

in the complaint, which were substantially as hereinbefore stated, the title to the premises in question (both that held by the minor children and by the surviving husband) was devested by the foreclosure of the bank's mortgage, and the same was vested in the bank under the sheriff's deed issued in pursuance of the foreclosure proceedings, and, further, that the legal effect of the conveyance by the bank to John C. Dalrymple was to vest the title, both legal and equitable, in the minor children, the plaintiffs herein. The facts pleaded upon which the foregoing conclusions were based were found by the trial court to be true, and upon a review of the evidence in this court we reach the conclusion that the findings are fully sustained. To this extent, therefore, these questions are ruled by our conclusions upon the former appeals.

On this appeal counsel for appellants urge two grounds for reversing the judgment of the trial court. It is urg'd in the first place that the contract entered into between Dalrymple and the bank, in pursuance of which the foreclosure was made, and the title passed to the bank, and subsequently to these plaintiffs, was fraudulent as to judgment creditors of Dalrymple, and that for this reason the title of Dalrymple did not pass to the bank by the foreclosure proceedings, but still remains in him, incumbered by the liens of the judgments. This contention is without merit. As has already been stated, the property in question, which the defendants seek to subject to the payment of their judgments, constituted the family and statutory homestead from 1883 until November, 1894. None of the several judgments of the defendants were entered prior to the attaching of the homestead exemption. The homestead right existed on April 24, 1893, the date when the contract in question was executed. It is apparent upon this state of facts that Dalrymple could incumber or alienate his interest in said property without consulting his creditors. Having the character of a homestead it was not subject to levy and sale under execution, and was not bound by the liens of judgments against him. Rev. Codes, § 3605; *Kvello* v. *Taylor,* 5 N. D. 76, 63 N. W. Rep. 889; 1 Black, Judgm. § 425; 2 Freem. Ex'ns, § 355. No valid reason existed to prevent Dalrymple from conveying his estate and interest in the property directly to the bank by deed, and it cannot be doubted, had he done so, the bank would have acquired all of his estate, entirely freed from the lien of the defendants' judgments. We agree with counsel for defendants that the foreclosure "was merely a form adopted to effectuate the conveyance of title, and thus execute the agreement of Dalrymple to convey, and the bank to accept, the farm lands in satisfaction of the debt." As has been said, Dalrymple could have conveyed all of his interest directly to the bank without impairing the rights of judgment creditors, and no valid reason is or can be urged why the same result does not follow a transfer of title through the foreclosure made in pursuance of the contract in question.

Counsels' second contention is that the judgments became liens

upon the property in question when the same was abandoned by Dalyrmple in the fall of 1894, and that, inasmuch as the judgment creditors were not made parties to the foreclosure proceedings, their right of redemption has not been cut off, but, on the contrary, that the liens of such judgments still exist, to the extent of Dalrymple's interest in the property at the time the homestead was abandoned. This contention can be asserted only as to five of the judgments. The remaining two were not entered until after the issuance of the sheriff's deed to the bank, and plainly such judgments never became liens upon the property in question. It must be conceded that the liens of the other five judgments attached to Dalrymple's interest, if he had an interest to which such liens could attach. That he had the legal title to an undivided one-third of the property is conceded. But mere title in Dalrymple is not sufficient to sustain judgment liens. There must be an interest to which the lien can attach. The law is well settled that the lien of a judgment does not attach to naked title, but only to the judgment debtor's interest in real estate; and if he has no interest, though possessing the naked title, then no lien attaches. *Thomas* v. *Kennedy*, 24 Iowa, 397, 95 Am. Dec. 740. As was said by the court in *Hayes* v. *Reger*, 102 Ind. 524, 1 N. E. Rep. 386: "The interest which the lien of a judgment affects is the actual interest which the debtor has in the property, and a court of equity will always permit the real owner to show (there being no intervening fraud) that the apparent ownership of another is or was not real; and when the judgment debtor has no other interest, except the naked legal title, the lien of a judgment does not attach." *Lounsberry* v. *Purdy*, 11 Barb. 490; *White* v. *Carpenter*, 2 Paige, 217; *Keirsted* v. *Avery*, 4 Paige, 9; *Brown* v. *Pierce*, 7 Wall. 205, 19 L. Ed. 134; *Hydraulic Co.* v. *Loughry*, 72 Ind. 562; *Moyer* v. *Hinman*, 17 Barb. 137; Freem. Judgm. § § 355, 356; 1 Black, Judgm. § 421. The concensus of judicial opinion, as stated by Freeman on Judgments, is that: "Whenever a lien attaches to any parcel of property, it becomes a charge upon the precise interest which the judgment debtor has, and no other. The apparent interest of the debtor can neither extend nor restrict the operation of the lien, so that it shall incumber any greater or less interest than the debtor in fact possesses." The question here presented has arisen most frequently in cases where judgments have been entered against a vendor of real estate after a valid contract to convey, and before the delivery of a conveyance to the vendee. It is held that on a sale under such intervening judgment the sheriff's vendee succeeds to the precise situation of the original vendor, and becomes entitled to require and receive payment of the balance of the purchase money. As was said by the court in *Wells* v. *Baldwin*, (Minn.) 10 N. W. Rep. 427: "In other words, the purchaser at such a sale would be entitled to the same rights as the vendor in the contract had, and would be compelled to make a conveyance to the vendee upon precisely the same terms upon which the vendor could have been com-

pelled to convey." It is well settled that the lien of a judgment attaching to real estate after a contract of sale extends only to the interest of the vendor, and is entirely subject to the contract of sale. 1 Black, Judgm. § 438; *Berryhill* v. *Potter*, (Minn.) 44 N. W. Rep. 251; 2 Freeman Judgments, § 364; *Filley* v. *Duncan*, 1 Neb. 134, 93 Am. Dec. 337, and case cited in note.

Tested by the foregoing principles, we may now inquire whether, upon the facts of this case, the judgments ever became a lien upon the premises in question. We have no hesitation in giving a negative answer to this question. This conclusion is based upon the ground that Dalrymple had at no time any interest in the property to which liens could attach. He had legal title to an undivided interest, but, as we have seen, bare legal title is not sufficient to sustain the lien of a judgment. The entire estate and title which descended to Oliver C. Dalrymple and the four minor children upon the death of his wife was mortgaged to the bank to secure his individual debt to the amount of $21,248.64. It is conceded that the value or all of the mortgaged property did not exceed $16,500. As between the heirs and the bank, there was in fact no valuable equity. The property was mortgaged for more than it was worth. But not only was the property mortgaged for an amount greatly in excess of its actual value, but Dalrymple's interest was incumbered with the greater proportion of the burden of the incumbrance. The debt secured being his individual debt, the other heirs were entitled in equity to have their interests entirely freed from the lien of the mortgages, and, as between them and their father, to have the burden of the same cast entirely upon his interest in the property. The amount of the mortgage debt, as has been stated, was $21,248.64. It is conceded that Dalrymple's one-third interest in all of the property mortgaged was only $5,500 in value, and that the interest of the four minor children was $11,000. The entire debt being the individual debt of Dalrymple, his interest in the property could be reached by judgment creditors only after paying the entire mortgage debt; and the value of his interest, as will be seen, is barely one-fourth of the amount for which it was incumbered. No attempt has been made by any of the judgment creditors to redeem from such incumbrance; neither do they offer to redeem in this action; and it is entirely apparent that no redemption would be made, even if the right to redeem existed. But it is entirely clear, upon the facts already stated, that the defendants never had a right of redemption. The contract entered into between Dalrymple and the bank for the transfer of his title to the bank was valid and binding upon both parties. The judgments, clearly, were not liens when it was entered into, and any rights which the judgment creditors may have are entirely subject to said contract. Under the rule previously stated, Dalrymple's judgment creditors could only reach such portions of the purchase money which the bank owed to Dalrymple in pursuance of the contract. No attempt has been made by any of the judgment

creditors to reach such purchase money, or any portion of the property which the bank agreed to transfer as consideration for the transfer to it of the property in question. But had they done so, their efforts would have been abortive, for the reason that it appears that the entire consideration paid to the bank for the property which it deeded to John C. Dalrymple, and which is here in question, and also the $1,000 paid to Oliver C. Dalrymple, and personal property released to him, moved entirely from the children. Upon this state of facts, the money so paid, property delivered, and real estate conveyed, belonged to the children who paid the consideration. Had the bank conveyed the property here in question to Oliver C. Dalrymple directly, instead of conveying it to John C. Dalrymple in pursuance of the contract and in accordance with the intention of the parties, nevertheless the judgment liens would not have attached. A trust would have resulted in favor of the minor children. Section 3386, Rev. Codes, provides that: "when a transfer of real property is made to one person and the consideration therefor is paid by or for another a trust is presumed to result in favor of the person by or for whom such payment is made."

In January, 1896, Howard C. Dalrymple, one of the four minor children, died. Under § 3742, Rev. Codes, his estate in the property in question descended to his father, Oliver C. Dalrymple. It is contended by counsel for appellants that the judgments became liens upon such interest. All that may be said as to this contention is that on April 3, 1896, which was after the death of Howard C. Dalrymple, the bank obtained the title to all of said property through the sheriff's deed. The title so obtained, which, as has been said, was both legal and equitable, was thereafter, and on April 8, 1896, conveyed to said John C. Dalrymple for the then surviving minor children who are the plaintiffs in this action.

For the reasons stated, we are of opinion that the title was properly quieted in the plaintiffs. The trial court found and adjudged that H. G. Scott, one of the defendants herein, holds the premises in controversy as tenant for plaintiffs. No accounting, however, for rent, was made or taken. The judgment in this action will therefore not prevent an independent action for such accounting, if the same shall be necessary.

Judgment affirmed. All concur.