[Civ. No. 712.    Third Appellate District.—November 19, 1910.]

## RIVERDALE MINING COMPANY, a Corporation, Respondent, v. CORINE WICKS, Appellant.

CORPORATIONS—ACTION AFFECTING LAND—FAILURE TO FILE ARTICLES—MATTER OF ABATEMENT—WAIVER.—In an action by a corporation affecting the title to land, its failure to file its articles of incorporation in the county does not forfeit its property, or deprive it of its cause of action, or bar another suit, nor go to the jurisdiction, but is merely matter of abatement of the action, the right to maintain which is suspended until the statute is complied with.    Such matter of abatement is a special defense which must be urged by a plea in abatement, which is waived, unless it is affirmatively pleaded.

ID.—GENERAL RULE—ARTICLES TO BE OF RECORD AT TIME OF PLEA.—It is the general rule that the articles of incorporation must be of record in the clerk's office at the time the plea in abatement is interposed, otherwise the plea is good.

ID.—EXCEPTION TO RULE—FAILURE TO PLEAD ABATEMENT IN ORIGINAL ANSWER—ALLOWANCE OF AMENDMENT—AGREED CONDITION—PROOF OF ARTICLES.—The general rule does not apply, where, after failure to plead abatement in the original answer the court allows it by way of amendment upon the agreed condition between the court and the parties that plaintiff may before submission of the cause prove

that the proper copy of the articles is filed for record in the county; and that proof of such filing shall be deemed a compliance with the statute for the purpose of maintaining the action.

ID.—EFFECT OF PROOF OF FILING UNDER AGREED CONDITION—RELATION TO AGREEMENT — DISALLOWANCE OF PLEA—PROOF IN REBUTTAL.— Proof of the filing of the articles in compliance with the agreed condition may be deemed to relate to the agreement, which antedated the plea, or it may be regarded as a disallowance of the conditional plea, or as competent testimony in rebuttal of the plea, as either would have the same effect of maintaining the action by such proof.

ID.—QUIETING TITLE OF CORPORATION—TITLE UNDER NAKED TRUSTEE— JUDGMENT LIEN AGAINST TRUSTEE INEFFECTIVE—TITLE OF DEFENDANT THEREUNDER VOID.—Where the corporation plaintiff derived its title from the owner through a naked trustee, no judgment lien could be acquired against such naked trustee, and no title could be acquired by the defendant under a sheriff's sale by virtue of such judgment lien, and the plaintiff corporation may quiet its title against the defendant.

ID.—NATURE OF JUDGMENT LIEN.—A judgment can operate as a lien only on the interest of the judgment debtor, and a mere naked trustee has no interest in the land upon which a judgment lien can attach.

ID.—HUSBAND AND WIFE—SALE OF COMMUNITY PROPERTY BY HUSBAND —PRESUMPTION AGAINST FRAUD.—A wife not a party is not presumed to have been defrauded by a sale of the community property by the husband, for a valuable consideration, through a trustee of the naked legal title, to pass the same to a purchaser. It must be presumed that the husband received in return an adequate consideration, though he received a less sum then he had originally asked.

APPEAL from a judgment of the Superior Court of Plumas County.   J. O. Moncur, Judge.

The facts are stated in the opinion of the court.

L. N. Peter, for Appellant.

McKee & Tasheira, for Respondent.

HART, J.—This is a suit to quiet title to certain land situated in Plumas county.

Plaintiff obtained judgment, from which the defendant has taken this appeal.

The evidence from which the court made its findings of fact is undisputed, and may be epitomized as follows:

On and prior to the fourth day of October, 1907, one W. W. Kellogg was the owner of the property in controversy. On said fourth day of October, 1907, Kellogg and wife, by·deed, conveyed said property to one Lloyd P. Cornell. Said deed was delivered to said Cornell on the day of its execution, and was recorded on the same day in the office of the county recorder of Plumas county, at twenty minutes past 4 o'clock P. M. Immediately after the delivery of said deed to Cornell, and on the said fourth day of October, 1907, the latter executed a deed to one Augustin S. McDonald, conveying to the latter the property concerned here, and said deed so executed to said McDonald was filed for record in the office of the county recorder of Plumas county at twenty-two minutes past 4 o'clock P. M., on the said fourth day of October, 1907. "On the seventh day of October, 1907, Augustin S. McDonald and wife conveyed the property to plaintiff, the deed having been recorded in the office of the county recorder of Plumas county, on October 9th, 1907, at thirty minutes past 9 o'clock A. M."

It appears that at the time of the happening of the several transactions so involving the property in dispute referred to in the foregoing statement, there existed against said Cornell and in favor of one C. E. Wright an unsatisfied judgment for the sum of $410.50, together with costs and interest, "said judgment having been recovered by Wright on the ninth day of December, 1903, and duly entered and docketed on that date."

"On the second day of March, 1908, said judgment being still unsatisfied, an execution issued thereon was levied by the sheriff of Plumas county on the property described in the complaint, and on the twenty-fourth day of March, 1908, said property was sold at sheriff's sale to appellant, who paid therefor the sum of $560, and on said date received from the sheriff a certificate of sale."

The plaintiff is a corporation, organized under the laws of California, and the first point urged against the validity of the judgment is that, having failed, before the commencement of this action, to file in the office of the county clerk of the county of Plumas a copy of the copy of its articles of incorporation, certified by the Secretary of State, as required

by section 299 of the Civil Code, the plaintiff is not entitled to maintain this action.

Said section reads, in part, as follows: ''Any corporation failing to comply with the provisions of this section cannot maintain or defend any action or proceeding in relation to such property, its rents, issues, or profits, until such articles of incorporation and such certified copy of its articles of incorporation, and such certified copy of the copy of its articles of incorporation are filed at the places directed by the general law and this section.''

It appears from the record that the original answer contained nothing by way of averment with regard to the failure of the plaintiff to file a certified copy of the copy of its articles of incorporation in the office of the county clerk of Plumas county. On the day on which the cause was called for trial, however, the attorney for defendant applied to the court for permission to amend the answer so that he could interpose a special plea against plaintiff's right to maintain the action, and in support of said application stated that he had learned for the first time only a half an hour prior to the hour at which court was opened that plaintiff had omitted to comply with the provisions of section 299 of the Civil Code. Counsel for plaintiff objected to the amendment and at the same time requested a continuance of the trial of the case for a reasonable time within which to enable his client to file a certified copy of the copy of its articles of incorporation. He stated that he had up to that time supposed that such copy had been filed in the clerk's office, and that the application of defendant for permission to amend the answer had taken him by surprise. Finally the court allowed the amendment, upon an understanding between the attorneys for both sides and the court that, preferably to a postponement of the trial for that purpose, the trial might be proceeded with, and that either during its progress the filing of the articles might be shown, or, if found necessary for that purpose, the case might be kept open after the conclusion of the taking of testimony addressed to the merits, so that proof, if available, might be *introduced* of plaintiff's compliance with the terms of said section.

Defendant objected, at the times that it was offered, to all the testimony submitted in behalf of plaintiff on the ground that said plaintiff was not entitled to maintain the action for

14 Cal. App.—34

the reason stated, and the court overruled said objection, subject to a reversal of its rulings thereon should plaintiff, as it was agreed that it might do, fail to prove that a copy of the copy of its articles had been filed in the office of the county clerk.

Agreeably to the said understanding or stipulation, plaintiff, before the case was closed, offered, and, over the objection of defendant, was allowed by the court to prove that, subsequently to the beginning of the trial, it had complied with section 299 in the respect referred to.

The contention of the defendant is that the filing of the articles under the indicated circumstances could not have the effect of curing plaintiff's incapacity to maintain the action at the time the court permitted the amendment to the answer so that it would include the plea challenging its right to do so.

The defense against the incapacity of a plaintiff to maintain an action involves a mere dilatory plea—in other words, a plea in abatement going only to the disability of plaintiff to maintain the action until such disability is removed. The disability having been removed before the close of the case, the plaintiff was properly allowed, under the stipulation to that effect, to show its capacity to maintain the action. If the court had, after allowing this plea to be added to the answer, and before plaintiff had complied with the terms of the statute, sustained the plea, the effect of such ruling would have been to abate the action only, and even if a dismissal of the action necessarily followed from the mere allowance of such a plea, which we do not decide, we know of no reason why it would operate as a bar to another suit upon the merits after the removal of the disability. As is said in the case of *California Savings and Loan Society* v. *Harris,* 111 Cal. 133, [43 Pac. 525], "the failure to file this certified copy does not impose upon the corporation a loss or forfeiture of its property, or impair or deprive it of any cause of action or defense it may have in reference to such property. A previous filing of the certified copy is not a fact essential to the cause of action, or of an element constituting the plaintiff's right of action; and the omission of such an averment in the complaint is not a ground of demurrer (*South Yuba Water Co.* v. *Rosa,* 80 Cal. 333, [22 Pac. 222]), or for the re-

versal of the judgment (*Labory* v. *Orphan Asylum,* 97 Cal.
270, [32 Pac. 231]), and consequently not a jurisdictional ele-
ment in the suit.   Nor does such failure afford to the other
party any defense to the cause of action upon which a suit
has been commenced, but is merely a special defense in the
nature of a plea in abatement (*Ontario State Bank* v. *Tib-
bits,* 80 Cal. 68, [22 Pac. 66]), by which the right of the
plaintiff to maintain the action is suspended until the stat-
ute is complied with, and is subject to the same rules of
pleading as are other pleas in abatement.   Being matter
merely in abatement, it is a defense which may be waived
by the defendant, and which is waived by him unless it is
affirmatively pleaded.''   (See *Labory* v. *Orphan Asylum,* 97
Cal. 270, [32 Pac. 231]; *First Nat. Bank of San Luis Obispo*
v. *Henderson,* 101 Cal. 307, [35 Pac. 899]; *Ward Land and
Stock Co.* v. *Mapes,* 147 Cal. 747, [82 Pac. 426]; *Nicholson*
v. *Auburn Gold Min. etc. Co.,* 6 Cal. App. 547, [92 Pac. 651];
*Reed & Co.* v. *Harshall,* 12 Cal. App. 703, [108 Pac. 719],
and cases therein cited.) .

But appellant here undertakes to differentiate the forego-
ing cases from the case at bar by the fact that, while in the
cited cases a copy of the articles was not filed before the ac-
tions were instituted, they were, nevertheless, filed before the
special plea was interposed, which, it is claimed, is not the
case here.   But, under the circumstances of this case, the
plaintiff is to be considered as having complied with the re-
quirements of the statute before the interposition of the
special plea, since the court declared, before allowing the
amendment to the answer, that said amendment would be al-
lowed only upon the understanding and agreement between
the parties that plaintiff might, before the case was finally
submitted for decision, *introduce* proof, if it could, that it
had filed a copy of the articles in the office of the county
clerk.   In the first instance, the defendant had, presump-
tively, waived any objection to plaintiff's right to maintain
the action for the reason urged under the special plea, and
the order permitting the amendment so that the answer would
embrace the special plea was one of grace and not of right.
The court could have disallowed the amendment and such rul-
ing would have involved only the exercise of a discretion
with which no reason for interference by a court of review

could well have been suggested; for "pleas in abatement, or dilatory pleas, have never been favored, and are to be strictly construed." (*California Sav. & L. Soc.* v. *Harris,* 111 Cal. 133, [43 Pac. 525]; *Tooms* v. *Randall,* 3 Cal. 438; *Larco* v. *Clements,* 36 Cal. 132; *Parmele Co.* v. *Haas,* 171 N. Y. 583, [64 N. E. 440].) "The party pleading them relies on technical law to defeat the plaintiff's action, and is held to a technical exactness in his pleading." (*Thompson* v. *Lyon,* 14 Cal. 39.) The general rule is, it is true, that a copy of the articles of incorporation must be of record in the clerk's office at the time the plea is interposed, otherwise the plea is good. But, in this case, as we have seen, the court, in the exercise of its discretion, allowed the amendment so that the special plea could be interposed upon the condition, agreed to by the defendant, that the plaintiff might at some time pending the trial, or before the formal submission of the case for decision was made, *introduce proof* that a copy of the articles was on file in the proper office, and it seems to us that when such proof was made, in accordance with said agreement, it related back to the time of the making of the agreement, which was before the plea was interposed. Under this view, it seems to us, the order allowing the amendment being upon the condition mentioned, and such condition having as agreed been complied with before the close of the trial, amounted to nothing less, in substantial effect, than a refusal by the court to allow said amendment. Or, if we view the proposition in the light of a rebuttal by competent testimony of the special plea, the result is the same. In short, the defendant, by agreeing to allow plaintiff to make proof of its compliance with the requirements of the statute, stipulated away the force of her special plea as effectually as if it had never been interposed—that is, such was the effect of the stipulation the moment competent proof was offered and received of the filing of the articles.

On the merits of the suit, it is contended by appellant that the judgment lien in favor of said Wright and against Cornell immediately attached to said property upon the execution of the deed by Kellogg to said Cornell.

This contention, it is asserted, is supported by the provisions of section 671 of the Code of Civil Procedure, which reads: "From the time the judgment is docketed, it becomes

a lien upon all the real property of the judgment debtor not exempt from execution in the county owned by him at the time or *which he may afterward* acquire, until the lien ceases.''

Under the facts of the several transactions concerning the property in dispute, as they are revealed by the record, this contention cannot be maintained. These facts may be summarized as follows:

In the year 1906, Senator Kellogg, then owner of the property, desired to dispose of the same, and with that object in view had an interview with Cornell. ''I tried to induce Cornell to get some parties to buy the place outright,'' testified Kellogg, ''or open it up for development. Mr. Cornell agreed that he would take the matter up, take the matter under consideration and do the best he could. I then made a bargain with him that I would sell the place for $6,500 clear to me; that any commission, that anything he did making the sale or developing the mine he must look to those parties for. We talked of giving a bond on the mine, which I refused, but I made out to him a deed of the whole property, and had my wife also sign the deed, stating the consideration. I then deposited that deed in the Plumas County Bank under certain written instructions.'' These instructions, which accompanied the deed in escrow, were to the effect that the witness would execute a deed, conveying said property free from all liens, encumbrances, etc., to Cornell or his assigns, provided that within one year from the date of said deed the sum of $6,500 was paid to witness. In accordance with this understanding with Kellogg, Cornell entered into negotiations with a Mr. McDonald, of Oakland, said negotiations resulting in an effort on the part of said McDonald to work and develop the property for mining purposes. This venture failed, and after the year within which Cornell was authorized to dispose of the property or otherwise handle it for Kellogg, as agreed, McDonald, through Cornell (several different extensions of time within which Cornell might be able to sell the place having been accorded to the last named by Kellogg), started negotiations for the purchase of said property. Kellogg testified that these latter negotiations were conducted by and between himself and McDonald, although Cornell was present certain parts of

the time during which they were in progress. McDonald was unwilling to pay for the property the sum of $6,500, the price demanded by Kellogg, and, after considerable discussion, the latter agreed to reduce the amount of the consideration to the sum of $3,250. McDonald accepted the proposition as thus modified and so bought the property. Thereupon Kellogg delivered the deed in escrow to Cornell, who, in turn, as already seen, immediately conveyed the property to McDonald, the grantor of plaintiff. The purchase price was paid by McDonald to Kellogg, Cornell claiming and receiving no part thereof.

With regard to the reason which inspired the act of delivering the deed in escrow to Cornell, rather than executing a conveyance of the property direct to McDonald, Kellogg testified: "After I reduced the price of the place from $6,500 to $3,250, I knew in my own mind that my wife would not sign it. I wanted to get rid of it; therefore, I told Mr. McDonald, I says, 'That deed, Cornell's deed, let that deed from me to Cornell, and Cornell make you a deed right here to-day; it would be just as good as if I made a new deed. I don't believe I can give you what you want.' . . . I used Mr. Cornell as a sort of trustee for a few minutes just to convey that title."

Cornell's testimony was substantially the same as that given by Kellogg. He declared that he never had any interest in the property in dispute, and that his part in the transaction culminating in the conveyance of the property to McDonald was only that of a trustee, in which capacity he acted for about fifteen minutes.

The court found that Cornell was never, at any time "the owner in fee simple, or otherwise, of said property," etc., and, as before declared in effect, this finding, under the evidence of which we have presented a brief résumé, is impregnable against successful attack.

The proposition that a judgment lien can operate as a lien only on the interest of the judgment debtor, whatever it may be, is too obvious to require the citation of authorities in its support. (Freeman on Judgments, 4th ed., sec. 357; Black on Judgments, 2d ed., secs. 420 and 421.)

Cornell, it is clear, had absolutely no interest in the property in controversy. The original arrangement between him

and Kellogg involved no more than the relation of princi-
pal and agent, or at best amounted to no more than a mere
option by which Cornell was given the right to buy the prop-
erty within the time stipulated in the instructions accom-
panying the deed in escrow.   If it was an option, Cornell did
not exercise his right thereunder.   But the fact is, the legal
relation existing between Kellogg and Cornell as to the prop-
erty was at all times only that of principal and agent.   In
the conveyance of the property to McDonald, it transpired
that it was more convenient for Kellogg to use Cornell as an
instrumentality or a trustee—a conduit, so to speak, through
which that act might be consummated.   Cornell first pro-
posed that the property be bonded to him, but Kellogg re-
fused to accede to that proposition and then suggested the
deed in escrow, said deed to remain undelivered until Cor-
nell either bought the property himself or it was sold to
others, and finally the delivery of the deed to Cornell was not
because Cornell had bought the property or had acquired any
interest whatever in it, but for the sole reason, as suggested,
that, under the circumstances, that was the most convenient
way of conveying to McDonald, the actual purchaser.   Cor-
nell's part in the transaction was, therefore, as both he and
Kellogg declared on the witness-stand, that of a mere trustee
of Kellogg.

The case of *Atkinson* v. *Hancock,* 67 Iowa, 452, [25 N. W.
701], is very similar to the case at bar.   There one Cum-
mins, against whom a judgment lien subsisted, purchased cer-
tain town lots for one Slead.   Cummins took the deed in his
name and conveyed to Slead, who paid the purchase price
to the grantor. .   It was claimed that the judgment lien against
Cummins attached to said lots, but the supreme court of
Iowa held against the contention, and said: " . . . But, if
it be conceded that Cummins paid the purchase money to
Harrison, and the deed was delivered to him, the fact remains
that the money so paid belonged to Slead, and that the pay-
ment was made for the purpose of vesting the title to the
lots in the latter.   Cummins was, it is true, vested with the
naked legal title.   The conveyance was made to him as a mat-
ter of convenience.   He was a mere conduit and held the legal
title in trust for Slead.   Under the circumstances Cummins
had no interest on which the judgment became a lien.   His

creditors can only get what he had, and what he had was of no pecuniary value." (See *Blaney* v. *Hanks,* 14 Iowa, 401; *Creswell* v. *McCraig,* 11 Neb. 222, [9 N. W. 52] ; *Fleming* v. *Wilson,* 92 Minn. 303, [100 N. W. 4] ; *Dalrymple* v. *Security Loan and Trust Co.,* 11 N. D. 65, [88 N. W. 1033] ; *Meier* v. *Kelley,* 22 Or. 136, [29 Pac. 267].)

In *Dalrymple* v. *Security Loan & Trust Co.,* 11 N. D. 65, [88 N. W. 1033], it is said: " . . . There must be an interest to which the lien can attach. The law is well settled that the lien of a judgment does not attach to a naked title, but only to the judgment debtor's interest in the real estate; and if he has no interest, though possessing the naked title, then no lien attaches."

In *Hays* v. *Reger,* 102 Ind. 524, [1 N. E. 386], it is said: "The interest which the lien of a judgment affects is the actual interest which the debtor has in the property, and a court of equity will always permit the real owner to show (there being no intervening fraud) that the apparent ownership of another is or was not real; and when the judgment debtor has no other interest except the naked legal title, the lien of the judgment does not attach." (See *Lounsbury* v. *Purdy,* 11 Barb. (N. Y.) 490; *White* v. *Carpenter,* 2 Paige (N. Y.), 217; *Keirsted* v. *Avery,* 4 Paige (N. Y.), 9; *Brown* v. *Pierce,* 7 Wall. 205, [19 L. Ed. 134] ; *Hydraulic Co.* v. *Loughry,* 72 Ind. 562; *Moyer* v. *Hinman,* 17 Barb. 137; Freeman on Judgments, secs. 355, 356; Black on Judgments, 421.)

The cases of *Eby* v. *Foster,* 61 Cal. 282, 286, *Hibbard* v. *Smith,* 50 Cal. 511, and *First Nat. Bank* v. *Hays,* 7 Idaho, 139, [61 Pac. 287], cited by appellant, are not in point. Those cases hold that a judgment lien attaches to property during the smallest interval of time during which the real interest may be vested in the judgment debtor, while the judgment, having been docketed, subsists. No one has ever controverted this proposition and it is not disputed here. But the proposition that the judgment debtor must have a real interest in the property before the judgment lien can attach thereto is equally as incontrovertible. As we have already seen, Cornell had no real interest in the property involved here, having acted in the transaction with relation thereto simply and

solely as a trustee, and, as such, never having been invested with anything higher than the mere naked legal title.

Counsel for appellant declares that the ''plaintiff, after participating in a fraud upon a third person in reference to the property in controversy, seeks to hold advantage of and at the same time obtain relief in equity from the result of its own fraud.''

This declaration results from the testimony of Kellogg to the effect that, in conveying the property to McDonald, the grantor of the plaintiff, he used Cornell as a trustee for that purpose in order to prevent his wife, Mrs. Kellogg, from learning of the reduction of the purchase price of the property from $6,500 to $3,250, the insinuation being that Mrs. Kellogg was thus defrauded of her rights, and that, therefore, the appellant has thus placed itself in a position wherein it cannot ask relief from a court of equity consistently with the principles practiced in a court of conscience. In the first place, it is to be said, in reply to this contention, that no such issue is submitted by the pleadings, nor was there any such issue tried and adjudicated by the trial court.  Secondly, it is to be observed that it is plainly manifest that no such issue as to Mrs. Kellogg could have been appropriately tendered in this case, for Mrs. Kellogg was and is not a party to the suit and has not intervened to claim any rights as to the property in controversy.  Thirdly, it is to be said that Kellogg himself was vested with plenary power to sell or dispose of the property, even assuming it to have belonged to the community, so long as he did not dispose of it by gift (Civ. Code, sec. 172), and that, having sold it, it is to be assumed that he received in return for it an adequate consideration, notwithstanding the fact that he accepted a much less sum for it than he had originally asked.  Besides, counsel for respondent expressly and correctly declared to the court below during the trial that the only question before the court was, not whether Mr. Kellogg could pass the title without being joined in the deed of conveyance by his wife, but whether ''the understanding and agreement between Mr. McDonald and Mr. Cornell and Mr. Kellogg at that time were such that Mr. Cornell had no title upon which this lien could operate and have effect.''  Thus it is to be observed that, if there had been anything in the pleadings which would have

furnished a handle for erroneously lugging into the trial the question whether Mrs. Kellogg had been defrauded through the acts of her husband, McDonald and Cornell, such issue would have been expressly eliminated by the statement of appellant's counsel himself.

Appellant has not disclosed to us any reason why the judgment should not stand, and it is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.