**BANK OF HAWAII**, Plaintiff–Appellee, v. **STEVE RONALD HORWOTH** and **BRENDA LEE HORWOTH**, Defendants–Appellants, and **ROBERT JOSEPH ANTHONY, ANNETTE GEAN ANTHONY, GECC FINANCIAL CORPORATION**, Defendants–Appellees, and **CHESTER RAYMOND OWEN**, et al., Defendants

NO. 13273

(CIV. NO. 86–4509)

FEBRUARY 23, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND RETIRED JUSTICE
NAKAMURA, ASSIGNED BY REASON
OF VACANCY

OPINION OF THE COURT BY NAKAMURA, J.

The question in this appeal from the final order in an action brought by the Bank of Hawaii to foreclose three mortgages

executed by Robert J. Anthony and Annette G. Anthony is how the surplus proceeds of the sale of the mortgaged property, a leasehold estate subject to an agreement of sale, should be disbursed. The Circuit Court of the First Circuit distributed the surplus to the Anthonys, the sellers under the agreement, and to GECC Financial Corporation, a judgment creditor of the Anthonys. We conclude the circuit court erred in doing so because the agreement of sale operated to vest the equitable and beneficial ownership of the property in Steven R. Horwoth and Brenda L. Horwoth, the purchasers, and they had standing to claim the surplus despite their default in responding to the bank's complaint.

## I.

Robert J. Anthony and Annette G. Anthony, who were then husband and wife,[1] acquired the leasehold estate in a parcel of real property, situated in Kailua, Oahu and owned in fee by the Trustees of the Estate of Bernice Pauahi Bishop, through a mesne conveyance in 1978. Between 1978 and 1982, Mr. and Mrs. Anthony obtained three loans amounting to $101,000 in the aggregate from the Bank of Hawaii. The loans were evidenced by promissory notes and secured by mortgages on the property.

The Anthonys sold the leasehold thereafter to Steven R. Horwoth and Brenda L. Horwoth, the agreement of sale being executed and recorded in the Bureau of Conveyances on September 29, 1982. The Horwoths agreed to pay $128,000 for the property, make a down payment of $20,000, and make monthly payments as stipulated in the agreement of sale.[2]

---

[1] Mr. and Mrs. Anthony were divorced in 1982.

[2] The monthly payments were to be made to the Bank of Hawaii and applied to meet the obligations of the Anthonys under the promissory notes they delivered to the bank. The payments, however, did not meet in full the monthly payments due from the Anthonys to the bank.

The Anthonys also owed GECC Financial Corporation a substantial sum, and GECC obtained a judgment against them for more than $16,000 on May 1, 1984.[3] The judgment lien was recorded in the Bureau of Conveyances on May 25, 1984. Subsequently, Mr. Anthony acknowledged he could not pay his debts as they became due by filing a bankruptcy petition in or about September of 1985. The Horwoths apparently continued to make payments under the agreement of sale, despite Mr. Anthony's bankruptcy, until the bank's action was filed.

The Bank of Hawaii filed its action to foreclose the three mortgages on December 3, 1986, after the automatic stay of suits against a bankrupt provided by the federal bankruptcy laws was lifted. The bank named the Anthonys, the Horwoths, and GECC Financial Corporation as defendants;[4] it averred the Anthonys were delinquent in repaying the three loans and prayed that the mortgages given as security be foreclosed. Mr. Anthony and GECC responded to the complaint;[5] Mrs. Anthony and the Horwoths did not, and defaults were entered against them by the clerk of the circuit court. But neither Mr. Anthony nor GECC asserted a counterclaim or a cross–claim against any party to the proceeding.

Thereafter, the bank sought summary judgments against Mr. Anthony and GECC, default judgments against Mrs. Anthony and the Horwoths, an interlocutory decree of foreclosure, and an order for the sale of the mortgaged property. The circuit court awarded the bank the relief it sought. The court, however, "reserve[d] juris-

---

[3] GECC released Mrs. Anthony from her obligations under the judgment on July 18, 1985.

[4] Chester R. Owen and Ruth B. Owen were also named as defendants. But the Owenses did not claim any interest in the surplus proceeds from the sale of the property and are not parties to this appeal.

[5] Robert J. Anthony did not file a timely response to the bank's complaint. The bank and Mr. Anthony, however, stipulated that the default could be set aside, and Mr. Anthony filed an answer thereafter.

diction to determine the party or parties to whom any surplus [from the proceeds of the sale] shall be awarded herein."

The mortgaged property was sold by the court–appointed commissioner for $131,000. After the satisfaction of the debt and interest owing to the bank, the payment of taxes and lease rent, the payment of the commissioner's fee and expenses, and the payment of attorneys' fees for services rendered the plaintiff and costs, there was a sum of $23,876.54 remaining from the proceeds of the sale. The Horwoths retained counsel at this time and sought the disbursement of the surplus to themselves. The circuit court denied the motion, as well as the succeeding motion to reconsider the denial. The denial of reconsideration was premised on the court's conclusion that the provisions of Hawaii Revised Statutes (HRS) § 502–85(a)(2), which became effective on May 30, 1984,[6] did not apply to the agreement of sale and the judgment in question.[7]

The Horwoths then filed a motion seeking relief under Rule 60(b) of the Hawaii Rules of Civil Procedure (HRCP), arguing

---

[6] HRS § 502–85(a)(2) was enacted as part of Act 205, Session Laws of Hawaii 1984; the Act became effective upon its approval on May 30, 1984. *See* S.L.H. 1984, section 5. In relevant part HRS § 502–85(a)(2) reads as follows:

(a) The rights of a buyer under an agreement of sale which has been duly recorded in accordance with this chapter shall be entitled to priority over the claim of any other person with respect to the real estate covered by the agreement of sale where such claim results:

. . . .

(2) From a judgment in favor of the claimant against the seller affecting the real estate covered by the agreement of sale if the judgment or a notice of the action out of which the judgment arises was not recorded prior to recordation of the agreement of sale.

This appeal, however, does not turn on whether the agreement of sale or the judgment was recorded first.

[7] While the Horwoths were seeking the disbursement of the surplus in the circuit court, GECC was seeking an order disbursing the surplus to itself in the bankruptcy court. The bankruptcy court denied GECC's request on the ground that the state court had jurisdiction to deal with the surplus and directed the parties to seek relief there.

they were "the only beneficial and equitable owners of the property under the terms of the agreement of sale." GECC countered with a motion seeking the distribution of the surplus to itself and Robert J. Anthony; it argued the Horwoths did not have standing to seek the desired relief because defaults had been entered against them in the foreclosure proceedings and they also breached the agreement of sale by not continuing to make the agreed monthly payments.

Mr. Anthony joined in GECC's motion, and they agreed in writing that Mrs. Anthony, who like the Horwoths did not respond to the Bank of Hawaii's complaint and against whom a default also had been entered, would receive a part of the surplus. The circuit court denied the Horwoths' motion, granted GECC's motion, and entered an order distributing the surplus proceeds to GECC, Mr. Anthony, and Mrs. Anthony. The Horwoths' timely appeal to this court followed.

## II.

When the owner of all or some part of the title to property mortgages the property as security for a debt and then defaults in paying the debt, "[t]he circuit court may assess the amount due upon [the] mortgage, whether of real or personal property, without the intervention of a jury, and shall render judgment for the amount awarded, and the foreclosure of the mortgage." HRS § 667–1. "Execution may be issued on the judgment, as ordered by the court." *Id.* And "[w]hen public sale is made of the mortgaged property under [the mortgage foreclosure statute], the remainder of the proceeds, if any, shall be paid over to the owner of the mortgaged property, after deducting the amount of claim and all expenses attending the [sale]." HRS § 667–10. The primary issue in this appeal is who is entitled to the remainder of the proceeds when the mortgaged property is subject to an agreement of sale executed after the mortgage.

## A.

"An agreement of sale in this jurisdiction has become a common and established device utilized in the sale and purchase of real property." *Jenkins v. Wise*, 58 Haw. 592, 596, 574 P.2d 1337, 1340 (1978). It is commonly used also in the sale and purchase of leasehold estates in real property, particularly leases for years. "It is an executory contract which binds the vendor to sell and the vendee to buy the realty [or the estate therein] which constitutes the subject matter of the transaction. *State Savings & Loan v. Kauaian Development*, 50 Haw. 540, 445 P.2d 109 (1968)." 58 Haw. at 596, 574 P.2d at 1340.

"Under an agreement of sale, the legal title to the property remains in the seller, but upon the execution and delivery of the agreement of sale, there accrues to the [purchaser] an equitable interest in the land. *Cf. Hofgaard & Co. v. Smith*, 30 Haw. 882 (1929)." 58 Haw. at 596, 574 P.2d at 1340. "The legal title is retained by the [seller] essentially as security for the payment by the [purchaser] of the purchase price. *See S.R.A., Inc. v. Minnesota*, 327 U.S. 558 (1946)." 58 Haw. at 596, 574 P.2d at 1341.

"In some respects, and for some purposes, the contract is executory in equity as well as at law; but so far as the interest or estate in the land of the two parties is concerned, it is regarded as executed, and as operating to transfer the estate from the [seller] and to vest it in the [purchaser]." 2 J. Pomeroy, *Equity Jurisprudence* § 368, at 21 (5th ed. 1941). It is regarded as executed because "equity regards and treats as done what ought to be done." *Id.* "By the terms of the [agreement of sale, the interest or estate in] the land ought to be conveyed to the [purchaser], and the purchase price ought to be transferred to the [seller]; equity therefore regards these as done: the [purchaser] as having acquired the property in the land, and the [seller] as having acquired the property in the price." *Id.* Put another way, "[t]here is . . . an equitable conver-

sion; the [purchaser's] interest is at once converted into [an interest or estate in] real property with all its features and incidents, while the [seller's] interest, is to the same extent, personal estate." 2 J. Pomeroy, *supra*, § 372, at 33 (footnote omitted).[8]

## B.

Applying the foregoing precepts in the situation at hand, we can only conclude that upon the execution of the agreement of sale, the validity of which is not in question, "the equitable and beneficial ownership of the property[]" vested in the Horwoths. *Ventura v. Grace*, 3 Haw. App. 371, 374, 650 P.2d 620, 622 (1982). The Anthonys only had a lien serving as security for the payment of the purchase price. *Jenkins v. Wise*, 58 Haw. at 596, 574 P.2d at 1341. Their beneficial interest in the real property was gone, 2 Pomeroy, *supra*, § 368, at 24; it had been converted to personalty. 2 Pomeroy, *supra*, § 372, at 33. And since the Anthonys had no beneficial interest in the property, neither they nor their judgment creditors were entitled to share in the proceeds of the foreclosure sale.

---

[8] When conversion occurs

> *[t]he vendee* is looked upon and treated as *the owner of the land*; an equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years; although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, having a lien on the land, even if in possession of the vendee, as security for any unpaid portion of the purchase–money.

2 Pomeroy, *supra*, § 368, at 21–22 (footnote omitted) (emphasis in original). And

> *[t]he equitable interest of the vendor* is correlative with that of the vendee; his beneficial interest *in the land* is gone, and only the naked legal title remains, which he holds in trust for the vendee, accompanied, however, by a lien upon the land as security when any of the purchase price remains unpaid. This lien, like every other equitable lien, is not an interest *in the land*, is neither a *jus ad rem* nor a *jus in re*, but merely an encumbrance.

*Id.* at 24 (emphasis in original).

GECC was not entitled to a part of the surplus from the sale because its judgment "did not ripen into a lien" on the leasehold estate that was sold. *Marks v. City of Tucumcari*, 93 N.M. 4, 7, 595 P.2d 1199, 1202 (1979). Granted, "[a]ny money judgment or decree of a state court or the United States District Court for the District of Hawaii shall be a lien upon real property when a copy thereof, certified as correct by a clerk of the court where it is entered, is recorded in the bureau of conveyances." HRS § 636–3. But the Anthonys' interest in the estate for years had been converted into personal estate by the time GECC recorded its judgment in the bureau of conveyances. 2 Pomeroy, *supra*, § 372, at 33.

When the Horwoths sought the surplus proceeds as the beneficial owners of the mortgaged property, the circuit court, which was dealing with a matter "within the cognizance of a court of equity[,]" *Honolulu Plantation Co. v. Tsunoda*, 27 Haw. 835, 840 (1924); *Honolulu, Limited v. Blackwell*, 7 Haw. App. ___, ___, 750 P.2d 942, 948 (1988),[9] failed to "regard[] and treat[] as done what ought to be done." 2 J. Pomeroy, *supra*, § 368, at 21. And when the Horwoths sought reconsideration of the denial of their motion, the court denied it on grounds that their "Agreement of Sale and GECC's Judgment were recorded . . . prior to the effective date of [HRS §] 502–85(a)(2), [the statute] does not contain any provision for retroactive operation, [and the statute therefore] does not apply in this case[.]" But entitlement to the surplus by no means turned on whether the agreement of sale or the judgment was recorded first; the nature of the interest acquired upon the execution of the agreement of sale by the parties thereto was the dispositive factor.

---

[9] Before the adoption in 1952 of HRCP Rule 2 calling for "one form of action to be known as 'civil action'[,]" the statute authorizing foreclosures by action compelled such suits to be brought in equity. *See* Revised Laws of Hawaii (RL) 1945, § 12420; RL 1935, § 4720; RL 1925, § 2887.

### III.

The Anthonys and GECC, however, argue the Horwoths had no standing to claim the surplus because default judgments were entered against them earlier in the proceedings. "Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated." *Life of the Land v. Land Use Comm'n*, 63 Haw. 166, 172, 623 P.2d 431, 438 (1981). "The party focused upon, moreover, is almost invariably the plaintiff." 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531, at 339–40 (1984). Courts employ standing doctrines in deciding whether "the litigant advancing [a claim is or] is not properly situated to be entitled to its [adjudication]." *Id.* at 338–39. But the question here is not one of standing in the usual sense, that is whether the plaintiff had standing to sue. It is whether *defendants* in a mortgage foreclosure action who did not respond to the plaintiff's complaint and against whom default judgments were entered could still assert a claim to the surplus proceeds of the public sale of the mortgaged property on the basis that they were the beneficial owners of the property.

### A.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by [the Hawaii Rules of Civil Procedure] and that fact is made to appear by affidavit or otherwise, the clerk [of the court is authorized to] enter his default." HRCP 55(a). "[T]he party entitled to a judgment by default [may] apply [thereafter] to the court [for a judgment]." HRCP 55(b)(2). But "[a] judgment by default [cannot] be different in kind from or exceed in amount that prayed for in [his] demand for judgment." HRCP 54(c).

"[O]nce the defending party receives the original pleading he should be able to decide on the basis of the relief requested whether

he wants to expend the time, effort, and money necessary to defend the action." 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2663, at 139 (1983) (footnote omitted). And "it would be fundamentally unfair to give greater or different relief from that prayed for since a defaulting defendant may have relied on the relief requested in the complaint in deciding not to appear and defend the action." 10 C. Wright, A. Miller & M. Kane, *supra*, § 2662, at 131 (footnote omitted). Thus, "a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded." 10 C. Wright, A. Miller & M. Kane, *supra*, § 2663, at 140 (footnotes omitted); *cf. Matsushima v. Rego*, 67 Haw. 556, 559, 696 P.2d 843, 846 (1985) (By its plain meaning, HRCP 54(c) restricts the scope of relief that may be granted by default judgment to that specifically prayed for).

### B.

The default judgments against the Horwoths, of course, did not extend to the surplus; it was unquestionably a matter beyond the scope of the relief the plaintiff demanded or was entitled to.[10] The surplus, nevertheless, was a matter the court was obliged to treat. For "[w]hen public sale is made of the mortgaged property under [HRS chapter 667, as it was here], the remainder of the proceeds, if any, shall be paid over to the owner of the mortgaged property, after deducting the amount of the claim and all expenses attending the same." HRS § 667–10. Since it "reserve[d] jurisdiction to determine the party or parties to whom any surplus shall be awarded herein[,]" the circuit court recognized there was an issue still to be determined after the plaintiff was awarded the relief it sought.

---

[10] As we observed at the outset, the bank's complaint was the only complaint filed in this case. There were no cross–claims or counterclaims filed by any other party.

The Horwoths appeared thereafter and moved the court for an order disbursing the surplus. The Anthonys and GECC would have us rule the prior entry of default judgments against them pursuant to HRCP 55(b)(2) divested the Horwoths of the right to be heard or to any relief. The Hawaii Rules of Civil Procedure, however, reflect the essentials of due process and fair play. A ruling that the owner of mortgaged property could be dispossessed of the surplus from a foreclosure sale merely because he did not respond to a mortgagee's complaint that made no claim thereto would be totally inconsistent with due process.

Of course, "[o]nce the default [was] established, [the Horwoths] ha[d] no further standing to contest the factual allegations of plaintiff's claim for relief." 10 C. Wright, A. Miller & M. Kane, *supra*, § 2688, at 447 (footnote omitted). But the Horwoths were neither seeking to contest the allegations of the plaintiff's complaint nor attempting to overturn the judgment in its favor. They only wanted a ruling on a matter in which the plaintiff had no interest, a matter the court said was still to be determined.

Our procedural rules do not invariably deny a defendant a hearing or relief after a default is entered against him. "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute." HRCP Rule 55(b)(2).

Here, the circuit court decided the question of who owned the surplus proceeds was still pending after awarding the plaintiff the relief it sought, heard what the claimants of the surplus had to say, and ruled against the Horwoths. The claimants were all defendants in the foreclosure action who laid claim to the surplus on different grounds. We would have to say they were properly situated to seek the adjudication of its ownership. The court's decision to hear

them out was correct; its ruling on who among them should get the surplus was not.

The order distributing the surplus proceeds of the foreclosure sale to Robert J. Anthony, Annette G. Anthony, and GECC Financial Corporation is vacated, and the case is remanded to the circuit court for entry of an order distributing the surplus proceeds to Steven R. Horwoth and Brenda L. Horwoth.

*Philip D. Bogetto* for appellants.

*Edward M. Tsuji* (*Gary Y. Shigemura* and *Anthony D. Valdez* with him on the brief; Shigemura & Harakal, of counsel) for Appellee Robert J. Anthony.

On the brief for Appellee GECC Financial Corporation: *Allen I. Marutani* and *Richard S. Kawana.*