In re Wai Ha SUN, fka Christianna Wai Ha Sun, Debtor.

Wai Ha SUN, fka Christianna Wai Ha Sun, Plaintiff.

v.

ESTATE OF Theodore J. TICKTIN, Deceased; Bishop Trust Co., Ltd., a Hawaii corporation, in its corporate capacity and as Local Personal Representative for the Estate of Theodore J. Ticktin, Deceased; Edward G. Ticktin, Gerald T. Manpearl, Jerome L. Silpa, Co-Executors for the Estate of Theodore J. Ticktin, Deceased; Charles A. Ticktin; Aki Mizushima; Central Realty, Ltd., a Hawaii corporation; Betsy L. Sanftner; Robert H. Taniguchi; Security Title Corporation, a Hawaii corporation; Bradley Skinner; Aloha Motorcycle U–Drive, Inc., dba Aloha Funway Rentals, a Hawaii corporation; Ichizo Nishio; Law Offices of Taylor & Leong, a Hawaii Partnership; and Carroll S. Taylor, Defendants.

Bankruptcy No. 84–00586.
Adv. No. 88–0106.

United States Bankruptcy Court, D. Hawaii.

May 30, 1990.

Frederick W. Rohlfing, III, and Robert R. Scarlett, Honolulu, Hawaii, for plaintiffs.

Margery S. Bronster, Harrison P. Chung, and Presley W. Pang, Honolulu, Hawaii, for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER RE: TAX EXCHANGE DOCUMENTS

JON J. CHINEN, Bankruptcy Judge.

On April 9, 1990, a hearing was held on the "Motion Re Summary Judgment Concerning Tax Exchange Documents and for Constructive Trust" filed by Aki Mizushima, Central Realty Ltd. and Ichizo Nishio ("Movants") on December 22, 1989.

Present at the hearing were Harrison P. Chung, Esq. and Presley W. Pang, Esq. for Movants, and for Gerald T. Manpearl, Jerome L. Silpa, and Edward B. Ticktin ("Defendants"), and Frederick W. Rohlfing III, Esq. and Robert R. Scarlett, Esq. for Wai Ha Sun ("Sun"). Following the hearing, the Court took the matter under advisement. Based upon the records in the file, the memoranda and affidavits submitted and arguments of counsel, the Court renders this memorandum decision.

### FINDINGS OF FACT

On or about January 22, 1981, Dr. Barton R. Becker ("Becker") as Seller and Theodore J. Ticktin ("Ticktin"), as Buyer executed that certain document entitled Deposit, Receipt, Offer and Acceptance, and its Addendum ("DROA & Addendum"), concerning a real property located at 418 Pau Street, Honolulu, Hawaii ("Pau Street Property") for the sum of $225,000.00. Security Title Corporation ("Security Title") was named escrow agent for the transaction. Becker and Ticktin intended to conduct a tax-free exchange of certain likekind properties, including the Pau Street Property, under Section 1031 of the Internal Revenue Code of 1954.

The DROA provided, in part, as follows:

(b) Buyer hereby agrees to arrange for a third-party, who must be acceptable to Seller, to (i) purchase, at the time of closing, Seller's remaining rights under the Agreement of Sale (exclusive of the rights of Seller under the exchange escrow) in respect of the $15,000.00 payment due after closing for an amount equal to $15,000.00 less the outstanding balance of the existing first mortgage on the property in favor of Liberty Bank.

Pursuant to the DROA & Addendum, Ticktin arranged to have Sun purchase "Seller's remaining rights under the Agreement of Sale (exclusive of the rights of Seller under the exchange escrow) in respect of the $15,000.00 payment due after closing. . . ." As a result, on April 3, 1981, Stephen M. Gelber, Esq. as attorney for Barton R. Becker & Margaret Mei Ling Becker ("Beckers"), sent a letter, with enclosures, to Security Title. The letter stated that, pursuant to the DROA & Adden-

dum, the following documents were to be forwarded:

1. Exchange Agreement between Beckers as owner and Ticktin as Transferee

2. Partial Assignment between Beckers as Assignor, Sun as Assignee and Ticktin as Transferee

The letter further directed:

"You are hereby authorized and instructed to deliver the Certificate of Title and to close the transfer of the Pau Street Property *to Mr. Ticktin* when, and only when: (emphasis added).

The foregoing letter was approved by both Ticktin and Sun.

Thereafter, on or before April 10, 1981, the Beckers as "Owner", and Ticktin as "Transferee", executed that certain document entitled " 'Agreement of Sale' and Real Property Exchange Agreement" ("Exchange Agreement"). The purchase price for the Pau Street Property "was described as $225,000.00" in "Exchange Value". The Exchange Agreement was recorded in the Office of the Assistant Registrar of the Land Court, State of Hawaii, ("Land Court") on April 10, 1981 as Land Court Document No. 1062686, and noted on Transfer Certificates of Title ("TCT") Nos. 124,899 and 169,610 issued to the Beckers, which TCT covered the Pau Street Property. Under this Exchange Agreement, Ticktin agreed to arrange for a third party to assume and pay the existing mortgage on the property in the approximate amount of $14,500.00.

Also on or before April 10, 1981, pursuant to the Exchange Agreement, the Beckers, as "Owner", Ticktin, as "Transferee", and Sun, as "Assignee", executed that certain document entitled "Partial Assignment of Owner's Interest under 'Agreement of Sale' and Real Property Exchange Agreement" (the "Partial Assignment"). The Partial Assignment was recorded in the Land Court on April 10, 1981 as Land Court Doc. No. 1062687, and noted on TCT Nos. 124,899 and 169,610.

On May 4, 1981, Stephen Gelber, Esq., the attorney for the Beckers, sent a letter to Security Title and forwarded a copy of a Warranty Deed by which the Beckers would be transferring title to the Pau Street Property to Ticktin, with a release by Sun. Gelber's letter notes that the Warranty Deed was to be executed by the Beckers.

In a letter dated May 14, 1981 and addressed to Security Title, Ticktin anticipated that the Warranty Deed for the Pau Street Property would eventually be filed in his favor, when certain conditions were satisfied. Those conditions were: (1) certain matters concerning monies in Escrow No. 27818–CC and the Nolan Realty Trust Account; and (2) written confirmation that the Liberty Bank Mortgage, then held by National Fidelity Life Insurance Company, had been paid in full. Ticktin specifically stated that the written confirmation may be provided by either Sun or himself.

Then, on or about May 18, 1981, the Beckers as Grantor, Ticktin as Grantee and Sun as Assignee executed a certain document entitled Warranty Deed ("Warranty Deed"), wherein the Beckers conveyed their interest in the Pau Street Property to Ticktin in fee simple absolute, with Sun releasing all of her right, title and interest therein to Ticktin.

Sun's release stated:

[T]he Assignee [Sun] does hereby release and quitclaim unto the Grantee [Ticktin] all of her right, title and interest in and to said Partial Assignment of Owner's Interest Under 'Agreement of Sale' and Real Property Exchange Agreement and in and to the above-described property ..."

The second amended closing statement for Ticktin shows that the amount of $838.56 was transferred to the "Becker/Sun transaction" for the Partial Assignment. A letter dated May 27, 1981, from the escrow officer at Security Title and addressed to James K. Anderson, the realtor who represented Ticktin, requested that Ticktin remit a check for $2,262.43 to pay the amounts due the Beckers under Sun's closing statement for the $15,000 under the Partial Assignment. The above facts show that Sun received the benefit of Ticktin paying on her behalf $838.56 and $2,262.43 to the Beckers, which also show that Sun did not fully perform her obligation under the Partial Assignment.

A letter dated June 1, 1981, from Mr. Gelber, the Beckers' attorney, addressed to Security Title, essentially contained the same escrow instructions sent to Security Title by Ticktin in his letter dated May 14, 1981. The letter stated that the Warranty Deed could be recorded in Ticktin's favor upon fulfillment of two conditions:

(1) certain matters concerning monies in Escrow No. 27818–CC and the Nolan Realty Trust Account; and

(2) written confirmation that the Liberty Bank Mortgage, then held by National Fidelity Life Insurance Company, has been paid in full.

Gelber's letter to escrow delivered four (4) original executed copies of the Warranty Deed from the Beckers in favor of Ticktin, with a release by Sun.

On June 2, 1981, Security Title made the final disbursement of funds from escrow due under the Ticktin DROA. In accordance with the escrow instructions, Security Title held the Warranty Deed pending release of the mortgage on the property.

On or about September 12, 1981, Gary Dwight Henig ("Henig"), with whom Sun has been residing, recognized Ticktin's ownership interest in the Pau Street Property by entering into an Option Agreement with Ticktin as Seller, wherein Henig obtained the option to purchase the Pau Street Property for $250,000.00 in cash payable by September 15, 1983.

It is to be noted that Ticktin died on July 17, 1983 and his son Charles Ticktin was appointed special Administrator of the Estate of Theodore J. Ticktin, until he was later replaced by Bishop Trust Company, Limited.

Sun contends that Henig had exercised the Option Agreement and had assigned his rights in the Pau Street Property to her. On the other hand, the Movants and Defendants contend that, because the Option Agreement and the Exercise of the Option Agreement were never filed with the Land Court, such documents do not affect the Pau Street property which is registered under the Torrens System. In addition, Movants and Defendants contend that,

Henig had not paid the $250,000.00 consideration required under the Option Agreement and, in addition, the statute of limitation had run against Sun and Henig on any action to demand the Pau Street Property under the Option Agreement. Because the issue of the Option Agreement is not part of the Motion for Summary Judgment, it is not discussed herein.

To claim interest in the Pau Street Property, in spite of signing the Warranty Deed, Sun claims that she had an agreement with Ticktin that the Pau Street Property was to be purchased by Ticktin, then later conveyed to her because she had worked at Tiki Torch without receiving any salary. In addition, Sun and Henig contend that the Warranty Deed was to be recorded by Ticktin only if a certain property at 1128 Nuuanu Street Property was condemned by the City and County of Honolulu.

To support her position, Sun attempted to offer into evidence a document entitled:

SPECIAL POWER OF ATTORNEY

CONCERNING THE REAL PROPERTY LOCATED AT

1128 NUUANU AVENUE

HONOLULU, HAWAII

--------------- AND ---------------

DECLARATION OF THE STATUS OF ALL

BUSINESS TRANSACTIONS INVOLVING

THEODORE TICKTIN—GARY HENIG—CHRISTIANNA

WAI HA SUN—&—PSYCHE GLORIA HENIG

AS OF THIS DATE—FEBRUARY 6, 1981

--------------- AND ---------------

ASSIGNMENT(S) OF ALL RIGHT,

TITLE, AND INTEREST IN & TO

THE ITEMS REFERENCED HEREIN

The above-document is hereinafter referred to as "Declaration of Status".

Both Sun and Henig in their depositions held from November 27 through December 1, 1989 at San Diego, California testified that Ticktin had executed the Declaration of Status on February 6, 1981 and that his signature was notarized by Patricia Brady on the same date. However, at a hearing held on April 6, 1990, Mrs. Brady testified that, although on February 6, 1981, she did notarize the signature of Ticktin to four separate documents, which she recorded in the Notarial Book filed with the First Circuit Court, State of Hawaii, she did not notarize Ticktin's signature to the Declaration of Status.

The Court carefully observed the demeanor of Mrs. Brady, an attorney, while she testified and the Court believes her testimony. Following the hearing, the Court found that Mrs. Brady did not notarize Ticktin's signature to the Declaration of Status and further found that both Sun and Henig have attempted to commit a fraud on the Court by their false representation. As a result, the Court ruled that it cannot believe any of their testimony.

To the extent that these Findings of Fact constitute Conclusions of Law, they shall be so deemed.

## CONCLUSIONS OF LAW

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) of the Federal Rules of Civil Procedure; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The Court finds that the Pau Street Property is real property registered with the Land Court. Hawaii Revised Statutes § 501–101 provides, in relevant part, the following:

No deed, mortgage or other voluntary instrument, except a will and a lease for a term not exceeding one year, purport-ing to convey or affect registered land, shall take effect as a conveyance or bind the land, but shall operate only as a contract between the parties, and as evidence of authority to the registrar or assistant registrar to make registration.

The Court finds that Sun may not claim any real property interest in the Pau Street Property under any document which is not filed with the Land Court as against any entity not a party to such document.

■ The threshold issue in this proceeding is determining whether Sun held any interest in the Pau Street Property, and whether any such interest constituted property of the estate under 11 U.S.C. § 541(a). This distinction, of whether Sun's alleged interest constituted property of the estate under § 541(a) is important.

Section 541(a)(1) does not automatically include in the debtor's estate any interest that the debtor held prior to the petition date. The United States Supreme Court has ruled that estate property does not include "property of others held by the debtor in trust at the time of the filing of the petition." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515, 522 n. 10 (1983). Likewise, the Court of Appeals of the Ninth Circuit has ruled that Section 541(a)(1):

[M]erely defines what interests of the debtor are transferred to the estate. Regardless of § 541(a)'s scope, [the lower court's] reliance upon it [for a broad definition of property of the debtor's estate] is misplaced. That provision merely defines what interests of the debtor are transferred to the estate. It does not address the threshold questions of the existence and scope of the debtor's interest in a given asset.

*State of California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.)*, 792 F.2d 1400, 1402 (9th Cir.1986).

Accordingly, each trust and escrow: must be considered individually with respect to the circumstances of each. When a trust is created with the debtor's money for the benefit of another, that

account is usually not considered property of the debtor's estate even though the debtor arguably retains at least some kind of interest in it. Furthermore, where the debtor's deposits constitute a statutory or constructive trust, the contents are almost always excluded from property of the debtor's estate.

Escrow accounts are more difficult to diagnose. Factors that are relevant, although not necessarily determinative, include whether the debtor initiated and/or agreed to the creation of the escrow, what if any control the debtor exercises over it, the incipient source of it, the nature of the funds put into it, the recipient of its remainder (if any), the target of its benefits, and the purpose for its creation. In short, whether an escrow constitutes property of a debtor's estate depends entirely on the nature and circumstances of the escrow in question. (Footnotes omitted.)

*In re World Communications, Inc.*, 72 B.R. 498 (D. Utah 1987).

Such a determination is made by referring to nonbankruptcy law, the laws of the relevant state. *State of California v. Farmers Markets, Inc.*, 792 F.2d at 1402; *In re Hughes & Associates Ins. Agency, Inc.*, 71 B.R. 92 (Bankr.S.D.Ind.1987).

In considering agreements of sale, the Hawaii Supreme Court has ruled that the vendor, the seller, only retains a naked legal title to secure payment of the balance of the purchase price, and that the beneficial interest, the entire real property interest, passes to the vendee, the buyer, upon execution and delivery of the Agreement of Sale. *Jenkins v. Wise*, 58 Haw. 592, 574 P.2d 1337, 1340–41 (1978); *Bank of Hawaii v. Horwoth*, 71 Haw. 204, 787 P.2d 674 (1990) ("*Horwoth*"). In *Horwoth*, the Hawaii Supreme Court stated that the vendor's lien was personal property; it did not constitute an interest in real property. It also stated that the vendor's naked legal title was held in constructive trust for the vendee, *id.*, see *Jenkins v. Wise*, 58 Haw. 592, 574 P.2d 1337.

It matters not whether Sun had a personal property interest or a real property interest in the Pau Street Property, for she had released all of her right, title and interest in said property to Ticktin by virtue of that Warranty Deed executed by the Beckers on or about May 18, 1981 in favor of Ticktin. This Warranty Deed was placed in escrow.

All of the provision of the Exchange Agreement have been satisfied. The Warranty Deed was ready to be recorded when the mortgage was paid in full on January of 1984.

However, Sun and Henig contend that Sun signed the Warranty Deed with the agreement of Ticktin that he would record the Warranty Deed only in the event that the 1128 Nuuanu Property was condemned by the City and County of Honolulu. There is no document supporting such agreement.

Furthermore, because of an attempt on the part of Henig and Sun to commit a fraud on the Court, the Court does not believe in their testimony. The Court notes, that this adversary case was filed in August of 1988. Sometime around April of 1989, at one of the hearings, upon inquiry by the Court, counsel for Sun stated that he was not able to explain Sun's release of her interest in the Pau Street Property. The Court finds the oral testimony of Henig and Sun given in a deposition around November and December 1989 to be "fabricated" for this hearing, just as the Declaration of Status had been "fabricated" for this case. Such testimony cannot be believed.

Based on all of the foregoing and Sun's execution of the Becker Warranty Deed and its delivery to escrow, all of Sun's interests in and/or with respect to the Pau Street Property were placed into escrow for the benefit of Ticktin and the Ticktin Estate and did not and does not constitute property of the estate within the scope of 11 U.S.C. § 541(a).

Based on all of the foregoing, Sun no longer has any personal property interest or real property interest in the Pau Street Property based on the Tax Exchange Documents.

Based on all of the foregoing, the Court finds good cause for granting the foregoing motion for summary judgment re Tax Exchange Documents.

To the extent that these Conclusions of Law constitute Findings of Fact, they shall be so deemed. A Judgment will be signed upon presentment.