275 P.2d 687

**UTAH COOPERATIVE ASSOCIATION,**
**Plaintiff and Respondent.**

**v.**

**WHITE DISTRIBUTING & SUPPLY COMPANY, a corporation, Gordon P. Austin and Annell Austin, his wife, E. B. McCabe and Mary S. McCabe, his wife, and Elvira R. White, Defendants,**

**Verdi R. White, Defendant and Appellant.**

**No. 7627.**

Supreme Court of Utah.
Oct. 27, 1954.

W. D. White, Geo. E. Bridwell, Salt Lake City, for appellant.

Gaylen S. Young, Gaylen S. Young, Jr., Salt Lake City, for respondent.

WORTHEN, Justice.

This Court in its decision, reported in 237 P.2d 262, affirmed the decree of the trial court holding that the judgment of plaintiff, Utah Cooperative Association, referred to herein as Utah Co-op, against White Distributing & Supply Company, referred to herein as White Company, constituted a lien against the interest of Verdi R. White, appellant, President and General Manager of White Company, in real property located at 3149 South State Street, Salt Lake City, Utah, which property was being purchased by appellant and Gordon P. Austin under a contract for sale of real property. Gordon P. Austin was a stockholder in, and one of the incorporators of, White Company. Thereafter a rehearing was granted.

It is deemed necessary to set out the facts in come detail. Appellant and Austin entered into a contract to purchase the real property in question in November, 1945.

The White Company was incorporated February, 1946.

A building was constructed on the property being purchased by appellant and Austin in May, 1946.

So far as the evidence discloses, the White Company was in good financial condition when the building was erected.

Whether the building was built by White Company or by appellant and Austin, with funds and materials furnished by White Company, is not clear.

It is alleged in the complaint that the company was induced by Verdi R. White to pay out of its own funds $4,600 cash for materials which appellant and Austin used to build the building. On the other hand, in the supplemental proceeding appellant was asked if White Company built a building at 3149 South State Street, and he answered yes.

In May, 1947, long after the building in question was erected, plaintiff sold a substantial quantity of nails to the White Company. Later the White Company became insolvent.

Plaintiff brought suit against the White Company *alone* (case No. 82097, District Court, Salt Lake County) and on June 25, 1948, recovered a judgment. On December 17, 1948, plaintiff filed a Notice of Judgment lien in the office of the County Recorder of Salt Lake County, claiming a judgment lien upon the real property being purchased by appellant and Austin. On May 4, 1949, plaintiff brought this action and the case was tried beginning September 26, 1950.

While the instant case was pending, appellant as President of White Company was examined on January 6, 1950, in response to an order issued in Case No. 82097, requiring the White Company to appear in supplemental proceedings.

Plaintiff's evidence to support its claim of lien against appellant's interest in the property at 3149 South State Street, consisted of testimony given by appellant at the supplemental proceeding, which plaintiff's attorney read into the record while he was testifying for plaintiff. That testimony is as follows:

"Q. State your name, Mr. White. A. Verdi R. White.

"Q. You are President of the White Distributing & Supply Company, a corporation, that is correct? A. That is correct.

"Q. Now, the White Distributing & Supply Company built a building at 3149 South State Street in Salt Lake City, is that correct? A. That is correct.

"Q. Is that a brick building? A. Cinder block.

"Q. And that property is in your name as an individual? A. Partly. There are two individual owners.

"Q. Who? A. Gordon P. White, and Verdi R. White, under contract of purchase.

"Q. It is under the name of the seller. Mr. Austin and you are buying it from the seller? A. Yes.

"Mr. Bridwell: Excuse me. Mr. Young, you said Gordon P. White in one of the statements, is that correct?

"Mr. Young: That is what the reporter got.

"Mr. Bridwell: Of course, your next question was—it was in the name of Gordon Austin, so I think apparently—

"Mr. Young: Pardon me, I didn't mean Gordon P. White, Gordon P. Austin and Verdi R. White.

"The Court: Is your recollection refreshed by those notes, or are you just giving the reporter's notes?

"Mr. Young: I definitely remember this testimony. In fact I questioned him for the purpose of bringing out this particular testimony, because I understood those were the facts.

"The Court: This testimony is what you remember?

"Mr. Young: Yes.

"The Court: You may proceed.

"Mr. Young: (Reading) Q. Who is the seller? A. Mary and E. B. McCabe. I might be wrong on that.

"Q. McCabe? Although that property is being purchased by you as an individual, the corporation did spend its own funds building the building on it? A. That is correct.

"Q. How much approximately did the corporation spend putting the building up? A. Approximately $4,600.00.

"Q. And so you would say that that would be the interest of the corporation in that property? A. Yes."

Upon the foregoing testimony and notwithstanding the pleadings in this case, the trial court made the following conclusions of law:

"1. That defendants E. B. McCabe and Mary S. McCabe, his wife, have the fee interest in said real property described in paragraph 3 of the Findings of Fact subject, however, to an outstanding uniform real estate contract in which they sold the same to defendants, Verdi R. White and Gordon P. Austin and on which a balance is still owing to said McCabes of approximately $10,000.00.

"2. That defendant Verdi R. White has an undivided one-half interest in said buyer's equity in and to said real property described in paragraph 3 of the Findings of Fact, subject however, to an interest of $4,600.00 in said undivided one-half interest in said buyer's equity in favor of, and owned by, the defendant, White Distributing & Supply Company, a corporation."

The decree of the trial court with the addition of the description of the real property being purchased by appellant and Austin, was a restatement of the language set out in the conclusions.

The trial court, and this Court as reflected in its former decision, assumed that the admission of appellant was so conclusive as a declaration against interest that it was not overcome by testimony of the appellant given before the trial court. It is suggested that appellant's answer, "yes" to the question "And so you would say that that would be the interest of the corporation in that property?" was sufficient to authorize entry of a judgment against him, not in favor of plaintiff but in favor of the White Company.

Such an assumption was incorrect and we are now of the opinion that the lower court's judgment should be reversed. The last question asked appellant in the supplemental proceeding, together with his answer, fall far short of what is required to justify a decree that White Company has an interest in appellant's property.

It is suggested that appellant at the supplemental hearing should have explained his answer if he contended it meant something different than what the trial court and this court interpreted it to mean; and that his failure to explain his statement until the trial in this case brands it as an afterthought for the purpose of overcoming what he stated at the supplemental proceeding.

The majority opinion of this Court, reported in 237 P.2d 262, indicates that the instant action was filed subsequent to appellant's admission given at the supplemental proceeding. Such assumption is incorrect. As pointed out earlier in this opinion, this action was commenced on May 4, 1949. Yet appellant's examination at the supplemental proceeding was not made until January 6, 1950.

With these facts in mind, not mentioned in the former judgment of this Court, the criticism leveled at appellant for not making the explanations which this Court felt he should make, has less to justify it. Moreover, appellant was not before the court in the supplemental proceeding either as a judgment debtor or as a debtor of the judgment debtor, White Company. He was there as an officer of the judgment debtor only.

Prior to that hearing, appellant had pleaded to plaintiff's complaint in this action and had denied that White Company had any interest in the property in question. The White Company had answered plaintiff's complaint and denied that it had any interest in the property.

Gordon P. Austin and his wife answered plaintiff's complaint in April, 1950, and denied that "The White Distributing and Supply Co. has or ever had any interest in the property described in said paragraph."

In her answer, appellant's wife claimed an interest in the property, which interest the decree of the lower court as well as this Court ignores.

In plaintiff's complaint it is alleged that appellant, President of the White Company "caused that said defendant corporation, *without consideration,* pay out of its own funds in excess of $4,600 cash and materials for the purpose of erecting a building upon the real property particularly described in paragraph 3 herein. *That with said funds* the defendants, Verdi R. White and Gordon P. Austin, did, prior to the entry of said judgment, build a business building on said property. *That both of said defendants,* Verdi R. White and Gordon P. Austin, *knew at all times that said funds of said corporation were being used to build such structure* upon real property claimed to be owned by them. That said money of said corporation *was appropriated without authority* of the directors and stockholders of the said White Distributing and Supply Co., a corporation, and was made *in defraud* of the interest of creditors of said corporation." (Italics ours.)

The answer of White Company, appellant, and appellant's wife, denied that the appellant caused the White Company to pay out of its funds $4,600 without consideration; denied that the money of the White Company was appropriated without authority of the directors and stockholders; and denied that the same was done in defraud of the interest of the creditors.

The judgment of the trial court affirmed by this court in face of the verified answer of the White Co., appellant, and his wife, held that the answer of appellant to the equivocal question asked upon supplemental proceeding, calling only for a legal conclusion, was sufficient legal evidence of an interest in favor of White Company.

We do not perceive that it would be contended that an officer of the White Company other than appellant and Gordon P. Austin, could have vested an interest in the White

Company in appellant's property by answering as did appellant; nor could the testimony of appellant that the White Company spent $4,600 in putting a building on the property of "A" have effected that result.

As we perceive this matter, appellant's admission did not vest an interest in his real property in favor of White Company nor authorize the court to do so.

The White Company makes no claim that it has an interest in the property; the White Company disclaimed in its answer that it has any interest in the property in question.

The trial court excluded all evidence of fraud and bad faith.

This case does not encompass a constructive trust.

As we view the case—it boils down to a creditor-debtor relation. The record is silent as to any written agreement between the White Company and appellant and Austin, and it must be presumed that any agreement was in parole. The trial court probably assumed that appellant had agreed to give the White Company an interest in the property because of the money and materials used.

The difficulty with this theory is that after implying the contract, we must imply all of its terms. Equally consistent with the statements made by Verdi White and the relationship between him and the Corporation are (1) a contract between the landlord and tenant that the building was to remain personalty; (2) that the building was consideration for the lease; or (3) an agreement to give a lien on the property for the amount expended.

We are of the opinion that the answer "yes" given by Verdi White to the legal conclusion propounded as a question was at most appellant's conclusion of his relationship to the White Company. The rights of the White Company must rest in contract and not on such legal conclusions.

The statement of appellant that the White Company built a building on his land costing $4,600 was the evidentiary fact of the relation between the parties. Had he answered the last question propounded at the supplemental proceeding "no," would it be taken as conclusive that the White Company had no interest, contractual or otherwise?

Appellant is criticized for not amplifying and explaining his answer. Probably like criticism may be directed against plaintiff's attorney for not inquiring further at the time appellant was being examined. It would have been a simple matter for the attorney for appellant or the attorney for plaintiff to have asked appellant if the building constructed was to belong to the White Company with the right of removal; or if he and Austin had agreed to give it a lien or mortgage on their property; or if appellant and Austin agreed to repay the White Company for the money expended.

If such further questions had been asked, this matter would not now be perplexing this court.

The trial court's judgment is a conclusion that the White Company has a lien on appellant's interest in the property in question to the extent of $4,600. It was established by the admission of appellant and against abundant uncontradicted testimony that appellant had expended in excess of $25,000 to meet obligations of the White Company, and in face of uncontradicted testimony that the White Company had failed to pay the rent due for use of the premises in the amount of more than $3,500.

The decree of the trial court fails to do equity. It is undisputed that the White Company collected from three rental units on the property on which this building was constructed, amounts ranging from $150 to $200 per month for which it failed to account to appellant and Austin.

The trial court seemed not disposed to determine the equities between the parties but considered that the statement of appellant made at the supplemental proceeding could not be overcome by any evidence.

The case is remanded for further proceedings consistent with this opinion. Plaintiff should be given an opportunity to establish by competent evidence, if able, that the White Corporation has an equitable interest in appellant's property sufficient to satisfy the judgment. Appellant to recover costs.

McDONOUGH, Chief Justice.

I concur.

HENRIOD, Justice.

I concur except for the remand portion of the decision, which allows plaintiff to start all over and attempt to do that which it already had a chance to, attempted, but failed to do. Such remand simply gives the plaintiff two whacks at the situation, and operates as would the granting of a motion for a new trial on an error committed in favor of the movant,—which certainly would not be proper.

CROCKETT, Justice.

I dissent. The majority opinion proceeds upon the patently erroneous assumption that the trial court based its judgment for the plaintiff upon the idea that the answers of Verdi White in the supplemental proceeding either "vested an interest" in the real property in favor of the White Corporation, or that his admission was such as it "could not be overcome" by his later testimony to the contrary. This fallacy is persisted in notwithstanding the fact that there is nothing whatsoever in the findings or judgment of the trial court to so indicate, and the fact that every effort has been made to make clear to the majority, that neither the judgment of the trial court, nor the former opinion of this Court, nor any advocate of them, so far as the writer knows, has ever contended that such evidence either "vested an interest" in favor of the White Company or that it was such that other credible evidence "could not overcome it."

The plain and simple basis for the judgment of the trial court, and its affirmance in

our former opinion, is that this admission against interest, made by Verdi White, who was also President and Manager of the Corporation, amounted to *substantial evidence* from which the trial court could infer and find that such company had an interest in the property.

Inasmuch as Utah Co-op is entitled to a judgment lien on all of the real property owned by the judgment debtor, White Corporation, for the purposes of this action Utah Co-op stands in the shoes of White Corporation, and the trial court could properly proceed as if White Corporation were proceeding directly against Verdi R. White to assert its claim upon his interest in the property.

As the owner of the property, it cannot be denied that Mr. White was in a position to make an admission against his own interest in favor of the Company. It was both material and competent and I fail to see how it can be contended that it was not substantial. The issue before the Court was whether the White Corporation owned an interest, chargeable against whatever interest Verdi White had in the property. The judgment of the trial court expressly asserted that the lien would attach only against the interest of Verdi White. No rights of third parties, innocent purchasers, or even any interest of Verdi White's wife are here at risk.

The majority opinion seems to lose sight of the atmosphere of a supplemental proceeding brought to discover property of a judgment debtor, a fact which the trial court was undoubtedly keenly aware of. As very often happens, Mr. White as the responding witness in the supplemental proceeding did not have the desired information. The hearing was continued for two weeks for the purpose of having him bring the records to show the financial status of the White Corporation. After that time had elapsed and the records were not produced, Gaylen S. Young, plaintiff's attorney, examined Mr. White concerning said records as follows:

"* * * the record I wanted was concerning the financial statement of the Company. You claim you haven't got and can't produce it? A. Correct."

It was then that Mr. Young, apparently forearmed with information that the White Corporation had constructed a building upon property which Verdi R. White was buying personally, elicited from the latter the admissions set forth in the majority opinion ending with,

"Q. And so you would say that that [$4600.] would be the interest of the corporation in that property? A. Yes."

That testimony was introduced in the instant case as evidence that the White Corporation had an interest in the property. The fact pointed out in the main opinion that the admission was made subsequent to the filing of this suit, certainly does not in any way fortify the conclusion reached there, but on

the contrary lends credence to the finding and judgment of the trial court, Mr. White having made such admission well knowing that this suit against his company was pending.

It is true that upon the trial of the instant action he testified to the contrary. But he was a self-interested witness and I see no reason why the trial court could not disbelieve him under the rule that when a witness is self-interested, or where there is anything inherently incredible, unreasonable or inconsistent in his testimony, it is not mandatory upon the trial court to follow it.[1] Consistent with such rule, the trial court refused to find in accordance with his testimony at the trial but instead based its findings upon his admission at the prior hearing (the supplemental proceeding), and found that the White Corporation had spent $4600 in constructing a building on the property White was purchasing and decreed that the judgment of the plaintiff Utah Co-op, as creditor of the White Corporation, constitute a lien upon the purchaser's interest which Verdi R. White owned in the property.

It cannot be contended that Mr. White's testimony at the trial was undisputed. As above pointed out, it was opposed by his admission at the supplemental proceeding which was properly presented in evidence. It was material, competent and substantial evidence of the critical fact. At the time of the prior hearing Mr. White knew that the purpose of the supplemental proceeding was to discover property owned by the White Corporation for the purpose of satisfying the plaintiff's judgment against it. If he had paid $1900 for materials in the building; $3500 on the mortgage and/or caused 42 lots to be transferred by his brother for the purpose of discharging his obligation to the White Corporation, all of these things occurred prior to the time he made the admission. Even if these things were done, it would not conclusively prove discharge of his obligation to the White Corporation for constructing the building on his property. There could have been other debts or reasons for such payments and transfers. He was an experienced businessman and he was represented at the hearing by able counsel, yet no explanation of his statement appears to have been made in the proceeding, nor at all until trial of the instant action wherein the judgment lien was being asserted against his property. It would be strange indeed for him to say that the White Corporation had an interest in his property if obligation upon which the interest was based had in fact been offset by other payments.

The holding of the trial court is criticized as being based upon an expression of an opinion by a non-expert elicited from him by a leading question. Superficially this criticism may appear to have some merit but there are conclusive answers here. First no

1. See Jones v. California Packing Corp., Utah, 244 P.2d 640; and authorities therein cited; Kelly v. Jones, 290 Ill. 375, 125 N.E. 334, 8 A.L.R. 796; 32 C.J.S., Evidence, § 1037, p. 1089; 20 Am. Jur. 1031.

400

objection was made to the testimony on that basis. Second, and more important it should be considered in the light of the circumstances shown to exist in this case. It is often a difficult feat to uncover assets of an insolvent debtor, as White Corporation was, especially from the mouths of those whose property may go to pay the debt. Mr. Young, plaintiff's attorney, apparently knew of the facts concerning the White Corporation building the building. Upon being cross-examined as a witness whether he remembered Verdi R. White's testimony just as reported in this opinion, he affirmed that he did and further testified:

"In fact I questioned him for the purpose of bringing out this particular testimony, because I understood those were the facts."

Mr. White was no novice in matters pertaining to real estate. He was the head of a business which the record shows involved hundreds of thousands of dollars in acquiring property, financing, building and selling homes. The ownership of property is nothing so mysterious nor inscrutable that it necessarily takes a title expert to testify concerning it. This is particularly true where one makes an admission against his own interest as to the ownership of property. Whether the White Corporation owned an interest in this property, is something

which lay peculiarly within his own knowledge and with respect to which he could therefore testify. Wigmore states :[2]

" * * * it is a mistake to suppose that an 'expert' must be a person professionally occupied upon the matter to be testified to. * * * It is sufficient here to note that the only requirement is that the witness must be fitted to acquire knowledge on the matter he speaks about; and if he is thus fitted, that it is entirely immaterial whether he acquired his fitness by being professionally concerned in such matters. * * *"

The knowledge and experience of the witness usually go to the weight and credit to be given to his evidence rather than to its admissibility.[3] Both the competency and the credibility of the defendant's evidence were for the trial court's determination, which will not be disturbed unless it appears that he was patently wrong.[4] As indicated in the prior opinion of Mr. Justice Wade, it was the prerogative of the trial court to refuse to believe his testimony, given at this trial when his self interest was directly involved, and to find the facts in accordance with his prior admissions against his interest.

It is further urged that there is no proof of any writing evidencing an interest of the White Corporation in this property; that

2. 2 Wigmore Evidence (1940) Sec. 555, p. 635.

3. See Ibid., Sec. 555 ff.

4. Ibid., Sec. 561 and authorities there cited; Mary Jane Stevens Co. v. First Nat. Bldg. Co., 89 Utah 456, 57 P.2d 1099.

such interest, if it existed, must rest upon some parol arrangement between Verdi R. White and the White Corporation; that to recognize such interest would be in violation of the statute of frauds and also have dire effects upon record titles rendering it hazardous to rely upon them. It seems to be suggested if a written mortgage or contract between White and White Corporation had existed, such fact would in some way have aided the record title and those who might rely upon it.

It is not denied that the statute of frauds requires transfers of interest in land and contracts therefor must be in writing.[5] But suppose such document does exist but that it is unrecorded. No one except the parties themselves would have any notice, actual or constructive, concerning it, yet it certainly would not be argued that it would not be enforceable as between the parties. The fact that such document was not recorded would not prevent the White Corporation (or its creditor, the Utah Co-op, which for the purpose of this action stands in its shoes) from enforcing its obligation against the interest of Verdi R. White. Its being enforced against him could give no concern nor cause any hazard to McCabe, the fee title holder, Strand, who purchased from Austin, nor any other person who might be relying upon the record title as it would not in any way adversely affect their interest.

It would only affect that interest of Verdi R. White, the party to the agreement who knew all about it. We therefore fail to see why the trial court's holding in this case should give anyone cause for alarm with respect to the integrity of land titles.

Neither White's admissions nor other facts shown in evidence provide any basis for determination of whether White Corporation's interest in the property was outright partial ownership or merely an equitable interest. Neither this fact, nor the fact that White himself had only an equity, that is a purchaser's interest in the property, would prevent the judgment lien from attaching. In the early case of Unknown Heirs of Whitney v. Kimball, the Supreme Court of Indiana wrote :[6]

"Where the debtor * * * possesses an equitable interest in real estate, inasmuch as by law the creditor acquires by judgment, a lien on all real estate in which such debtor has the legal interest, equity in aid of the law, carries along the lien, and enforces it against real estate in which the debtor has only such equitable interest."

Equity views equitable interests in realty as real property.

When White said that it did have an interest, the matter of the nature of the interest, or whether it was evidenced by writing,

5. 25-5-1 and 25-5-3, U.C.A.1953.

6. 4 Ind. 546, 58 Am.Dec. 638. See 30 A.L.R. 504; 31 Am.Jur. Judgments Secs. 316, 324.

was pursued no further and the record here does not show what the interest of the Corporation in that property was. This does not compel a conclusion that there was no such interest, nor that there was no writing.

The prevailing opinion poses the proposition that: "*equally* consistent with the statements made by Verdi White and the relationship between him and the corporation are (1) a contract * * * that the building was to remain personalty; (2) that the building was consideration for the lease; or (3) an agreement to give a lien on the property for the amount expended." This statement pre-supposes that any of those three possibilities are *reasonable* deductions from the evidence. They are said to be *equal* to the finding the court made, therefore it must follow that it is also reasonable. If it be admitted that the trial court had at least an equal privilege of making the deduction he did, it also must be admitted that any slight weight in favor of his deduction would suffice, and that it was his exclusive prerogative to judge the weight of the evidence and to make any *reasonable* finding therefrom. He having made a finding which is *reasonable* from the evidence, it is not within our province to weigh the evidence and cast ourselves in the role of fact-finder by surmising other facts the court reasonably could have

found, and rule that he failed to choose the right one.

Should it be assumed that there was no such writing, such fact would not be controlling under the circumstances shown in this case. There is a very good reason why defendant cannot use the statute of frauds as a defense. We must keep uppermost in mind the fact that Verdi R. White was the president, manager and functioning officer of the White Corporation, and as such he had a fiduciary responsibility in handling its affairs.[7] In any transaction with the White Corporation, especially where the fruits of the arrangement were to his own advantage, there reposes upon him the burden of showing good faith and fair dealing.[8] It is undisputed that White was personally a purchaser of the property and there is competent evidence that the Corporation spent $4600 to put a building on this property which would remain there for Verdi R. White's personal benefit, for which he recognized the Corporation had an interest therein. As the active manager of the White Corporation it would have been Verdi R. White's duty to protect and properly secure its investment in the building by having a proper mortgage, lien agreement or other document prepared and executed for its benefit. If he failed to discharge that duty for the White Corporation,

7. Jansen v. Tyler, 151 Or. 268, 49 P.2d 372. See Jones Mining Co. v. Cardiff Mining & Milling Co., 56 Utah 449, 191 P. 426; 3 Fletcher, Cyclopedia Corporations (1947) Sec. 839; 19 C.J.S., Corporations, § 761.

8. Glen Allen Mining Co. v. Park Galena Mining Co., 77 Utah 362, 296 P. 231; Clark v. Clark, 398 Ill. 592, 76 N.E.2d 446. See Fletcher, Cyclopedia Corporations (1948) Sec. 921.

he certainly should not be permitted to take any personal advantage of his own dereliction in that regard. It would be a strange concept of equity and justice which would permit him to so act that his conduct would say in effect: "Yes, I, as the managing head of the White Corporation caused it to spend $4600 to put a building on property I am buying personally and I recognize that the Corporation has an interest in the property to that extent, but because you cannot prove a formal written arrangement to protect that interest, I will not pay the Corporation." Such conduct would amount to at least constructive fraud, which it has been many times held that the statute of frauds may not be invoked to aid.[9] Equity will not permit him to thus unjustly enrich himself, but will impose a constructive trust upon his interest in the property to protect the White Corporation,[10] and its creditor, the plaintiff, which stands in its shoes. This is what the judgment of the trial court did.

For the majority opinion in this case to prate of "equities" seems anomalous in this case. I approve of being righteous about the matter, but we better see that we are "squared with the compass." The indisput-able fact is that the result reached in the main opinion permits the defendant to have the benefit of over a thousand dollars worth of materials furnished by the plaintiff without paying for them. This done by reason of the fact that the defendant's corporation procured the materials, then went broke and failed to pay the debt, and the benefits inured to the individuals who created and managed the corporation in such a way that this result eventuated. Whereas, the judgment of the trial court at least did that which would comport with my sense of justice: gave the plaintiff as the material supplier, recompense for the materials it furnished, and required Mr. White, who got the benefit thereof to pay for them.

Although the evidence upon which the trial court based his finding was admittedly thin, I believe we should reaffirm our former holding sustaining his judgment, but with certain modifications to safeguard the rights of third parties which need not be expressed in this dissent.

WADE, J., concurs in the dissenting opinion of CROCKETT, J.

9.  4 Pomeroy, Equity Jurisprudence (1941) 144. See Renshaw v. Tracy Loan & Trust Co., 87 Utah 364, 367, 49 P.2d 403, 100 A.L.R. 872; Haws v. Jensen, 116 Utah 212, 209 P.2d 229, 232.

10.  Hawkins v. Perry, Utah, 253 P.2d 372, 375, wherein we stated, "Equity imposes a constructive trust to prevent one from unjustly profiting through fraud or the violation of a duty imposed under a fiduciary or confidential relationship." See In re Munsell's Guardianship, 239 Iowa 307, 31 N.W.2d 360, 376; American Railway Express Co. v. Houle, 169 Minn. 209, 210 N.W. 889, 48 A.L.R. 1266.