Raymond P.L. CANNEFAX and Debra Cannefax, Plaintiffs and Respondents,

v.

Donald W. CLEMENT and Ruth L. Clement, Defendants and Petitioners.

No. 900084.

Supreme Court of Utah.

Sept. 30, 1991.

Rodney M. Pipella, Valden P. Livingston, Salt Lake City, for Raymond P.L. and Debra Cannefax.

Steven H. Lybbert, Salt Lake City, for Donald and Ruth Clement.

Michael W. Homer, David R. Olsen, Salt Lake City, for amicus Utah Land Title Ass'n.

STEWART, Justice:

This case is here on certiorari from a decision of the Utah Court of Appeals which reversed a summary judgment entered by the trial court in favor of Donald and Ruth Clement. Donald and Ruth Clement are judgment creditors of George and Lila Barker, vendors of land under a uniform real estate contract. The issue before the Court is one of first impression: whether a vendor's interest in real property sold by a land sale contract is transformed by the doctrine of equitable conversion into personal property and therefore not subject to a judgment lien pursuant to Utah Code Ann. § 78–22–1 (1987). We hold that a judgment against the vendor of land under a land sale contract does not create a lien against a vendor's interest for purposes of § 78–22–1.

On August 28, 1981, pursuant to a uniform real estate contract, George and Lila Barker contracted to sell certain real property which they owned in fee simple to Diane Hodge. Ms. Hodge recorded notice of that contract on August 31, 1981. The defendants, Donald W. Clement and Ruth

L. Clement, obtained and docketed a judgment against the Barkers in August 1985. On September 25, 1985, Ms. Hodge paid the amount remaining on the contract, and the Barkers executed a deed to the property to her. On the same date, Hodge gave a warranty deed to the property to the plaintiffs, Raymond and Debra Cannefax. Both transactions took place at a single real estate closing. The Cannefaxes recorded their deed the next day. Following the closing but before the Cannefaxes recorded their deed, the settlement agent, Surety Title Agency, conducted a title search which disclosed the Clements' judgment against the Barkers. Two years later, the Clements sought to enforce the judgment lien against the property through an execution sale scheduled for September 22, 1987.

The Cannefaxes brought this action to quiet title. The trial court granted summary judgment in favor of the Clements, holding that the judgment created a lien on the property in the amount of $54,464.94, the unpaid amount on the contract on September 25, 1985, the closing date, less the amount of prior encumbrances. The court of appeals reversed and ordered the trial court to enter summary judgment in favor of the Cannefaxes, quieting title to their property. The opinion of the court of appeals is recorded at 786 P.2d 1377 (Utah Ct.App.1990). We affirm.

■ The issue presented to this Court is whether a vendor's interest in an executory land sale contract is "real property" under Utah Code Ann. § 78–22–1 (1987), so that a judgment docketed against the vendor after the contract is entered into creates a lien against the vendor's interest in the property. Utah Code Ann. § 78–22–1 provides:

> From the time the judgment of the district court ... is docketed and filed ... it becomes a lien upon all the real property of the judgment debtor, not exempt from execution, in the county in which the judgment is entered, owned by him at the time or by him thereafter acquired during the existence of said lien.... The lien shall continue for eight years unless the judgment is previously satisfied ... in which case the lien of the judgment ceases.

The court of appeals held that under the doctrine of equitable conversion, a vendor's interest in an executory land sale contract is not real property for purposes of § 78–22–1. *Cannefax v. Clement,* 786 P.2d 1377 at 1379–80 (Utah App.1990). In *Butler v. Wilkinson,* 740 P.2d 1244, 1253–54 (Utah 1987), we reiterated the proposition that under the doctrine of equitable conversion, a *vendee's* equitable interest in an installment land sale contract constitutes real property for purposes of § 78–22–1; however, this Court has not previously decided the nature of the vendor's interest for purposes of the lien statute. We now hold that a vendor's interest in an executory land sale contract is not "real property" as that term is used in § 78–22–1.

Although we have not previously considered the nature of a vendor's interest in an installment land contract, a number of other jurisdictions have. The cases are almost evenly divided, with a slight majority allowing the judgment lien to attach to the vendor's interest. R. Cunningham, W. Stoebuck, & D. Whitman, *The Law of Property* § 10.13, at 701 (1984). *Compare Mooring v. Brown,* 763 F.2d 386 (10th Cir. 1985) (applying Colorado law), *First Security Bank v. Rogers,* 91 Idaho 654, 657, 429 P.2d 386, 389 (1967), *May v. Emerson,* 52 Or. 262, 266–67, 96 P. 454, 456 (1908), and *Heath v. Dodson,* 7 Wash.2d 667, 672–73, 110 P.2d 845, 847 (1941) (holding that a judgment lien attaches to a vendor's interest in an executory land contract) *with Snow Bros. Hardware Co. v. Ellis,* 180 Ark. 238, 240–41, 21 S.W.2d 162, 163 (1929), *Hull v. Maryland Casualty Co.,* 79 So.2d 517, 518–19 (Fla.1954), *Bank of Hawaii v. Horwoth,* 71 Haw. 204, ——, 787 P.2d 674, 679 (1990), *Cumming v. First Nat'l Bank,* 199 Iowa 667, 669, 202 N.W. 556, 556 (1925), *Clarence M. Bull, Inc. v. Goldman,* 30 Md.App. 665, 667–68, 353 A.2d 661, 663 (1976), *Marks v. City of Tucumcari,* 93 N.M. 4, 6–7, 595 P.2d 1199, 1201–02 (1979), and *Mueller v. Novelty Dye Works,* 273 Wis. 501, 507, 78 N.W.2d 881, 884 (1956) (holding that a judgment lien does not at-

tach to a vendor's interest in an executory land contract). *See also* 46 Am.Jur.2d *Judgments* § 266 (1969); Annotation, *Right of Vendee Under Unrecorded Executory Land Contract as Against Subsequent Deed or Mortgage Executed by, or Judgment Rendered Against Vendor*, 87 A.L.R. 1505 (1933).

In other cases, this Court has previously held that the doctrine of equitable conversion applies to transform a vendor's interest in a land sale contract from a real property interest into a personal property interest. For example, in *Allred v. Allred*, 15 Utah 2d 396, 399, 393 P.2d 791, 792 (1964), the Court stated, "As a general rule an enforceable executory contract of sale has the effect of converting the interest of the vendor of real property to personalty." Also, in *In re Estate of Willson*, 28 Utah 2d 197, 200, 499 P.2d 1298, 1300 (1972), the Court held that a widow could not, for purposes of limiting inheritance taxes, claim an exclusion based upon a dower interest in real property subject to an executory contract of sale. The Court stated that the vendor's interest was " *'no longer real estate ... but personal estate ...* and if he dies before payment, it goes to his administrators, and not to his heirs.' " *Id.* (emphasis in original) (quoting 1 Pomeroy, *Equity Jurisprudence* 105, 135 (5th ed. 1941)).

*Jelco, Inc. v. Third Judicial District Court*, 29 Utah 2d 472, 475, 511 P.2d 739, 741 (1973), was a condemnation case which held that the vendee was the equitable owner of property under an executory land contract and therefore entitled to the appreciation in the value of the land occurring after the contract was executed. Although the Court declined to apply equitable conversion in *Reynolds v. Van Wagoner*, 592 P.2d 593, 594 (Utah 1979), it was the *vendor* who sought application of the doctrine rather than the vendee. As the Court noted, the vendor's attempt to alter the contract by relying on equitable conversion was clearly impermissible. Finally, in *Butler v. Wilkinson*, 740 P.2d 1244, 1253–54 (Utah 1987), the Court held that a *vendee's* equitable interest in an

installment land sale contract is real property for purposes of § 78–22–1.

The Cannefaxes argue that because this Court held that a vendee's interest in a real estate contract is a real property interest, it must necessarily rule that the vendor's interest is not real property. The court of appeals relied on the above cases and the language in *Butler* which stated that if a vendee has an interest in real estate, by a " 'parity of reasoning' " the vendor is deemed to have converted his real property interest to a monetary or legal interest. *Cannefax*, 786 P.2d at 1380 (quoting *Butler*, 740 P.2d at 1255 n. 5). However, that language from *Butler* was intended only as a general description of the doctrine of equitable conversion. The question of the nature of the vendor's interest was not before the Court in *Butler*. In fact, we also observed in *Butler* that

> the characterization of the vendee as "owner" of the land and of the vendor as having no interest in the land is not wholly accurate. The vendor's retention of the legal title is usually coupled with a contract right to forfeit the vendee's interest and to take back the vendee's interests if the vendee defaults.

740 P.2d at 1255 (citation omitted). We also noted that this characterization of the vendor's interest as a lien is not completely accurate:

> The term "vendor's lien" seems to have stuck even though it is inaccurately used before the vendor parts with the title. Until then, it is not, in fact, a lien at all, but rather a retained interest in the land that is derived from the vendor's retention of the fee title.

740 P.2d at 1256 n. 6 (citation omitted). In other words, the mere fact that the vendee is treated as having a real property interest does not necessarily preclude the vendor from also having such an interest.

■ The dissent in the court of appeals opinion also asserts that this Court has already taken a position on this issue. Quoting *Butler*, the dissent states:

> "Nor for that matter, is a judgment lien against the vendor's interest extinguished by the vendor's sale of that in-

terest to a third person." The Clements argue, and I agree, that this statement clearly shows that the Supreme Court considers the seller's retained title to be real property, since judgment liens attach only to real property, not to personal property, pursuant to section 78–22–1. *Cannefax*, 786 P.2d at 1385 (quoting *Butler*, 740 P.2d at 1258). However, that quotation simply stands for the proposition that a judgment lien which has already attached to real property will not be destroyed by a subsequent conveyance of the property. In other words, the property passes subject to the lien. *See Utah Farm Prod. Credit Ass'n v. Wasatch Bank*, 734 P.2d 904 (Utah 1987); *Barlow Soc'y v. Commercial Sec. Bank*, 723 P.2d 398 (Utah 1986). That statement has nothing to do with the nature of a vendor's retained interest.

The dissent in the court of appeals opinion also argues that the majority's holding is contrary to the intent of the contracting parties. *Cannefax*, 786 P.2d at 1388 (Bullock, Senior District Judge, dissenting). However, the fact that the contract may have "contemplate[d] a transfer of ownership by deed after all installments have been paid" is irrelevant to construing the judgment lien statute.[1] The true issue is whether the vendor retained a sufficient interest in the property to qualify as "owning real property" for purposes of § 78–22–1.

Section 78–22–1 provides that a judgment becomes a lien upon the real property owned by the judgment debtor at the time of docketing. The position taken by the Clements and the trial court is that the judgment lien attaches to real property to the extent that the contract remains unpaid. This argument is inconsistent with the assertion that the vendor's retained title causes his interest to be real property. If the vendor's retention of legal title were sufficient to constitute real property under § 78–22–1, it follows that the judgment lien should attach to the entire property, subject to prior encumbrances. As this Court recognized in *Belnap v. Blain*, 575 P.2d 696, 699 (Utah 1978), the fact that a judgment debtor has no equity in real property because encumbrances on the property exceed its fair market value does not prevent a judgment lien from attaching to the property, subject to prior encumbrances. The Clements' position, that the lien attaches only to the extent the contract is unpaid, is actually the first step toward applying the doctrine of equitable conversion. That position recognizes that the vendor's true interest is in receiving the unpaid amount on the contract, an interest more akin to personalty than to realty.

The principle underlying *Butler, Allred, Willson,* and *Jelco* is that the vendee of an executory land sale contract holds equitable ownership of the property but not legal title. As stated in *Butler*, the vendor retains the naked legal title, which serves as the basis for forfeiting the vendee's interest and retaking possession if the vendee defaults. 740 P.2d at 1255. In *Belnap*, the Court recognized that a judgment lien does not attach to "bare legal title" to property held by a "trustee of an express, constructive, or resulting trust or [by] an agent or mere conduit for the transfer of title to the true owner." 575 P.2d at 699. Admittedly, the vendor's interest in this case constitutes more than "bare legal title." However, for purposes of § 78–22–1, that interest is more closely analogous to the examples mentioned in *Belnap* than it is to true "ownership of real property" as required by the statute. Although the vendor may forfeit the vendee's interest, he may do so only if the vendee first defaults, an event which is completely out of the hands of the vendor. Furthermore, a vendor who breaches a land sale contract in an attempt to retain the property will be subject to either damages or a decree for specific performance. *See Willson*, 28 Utah 2d at 200, 499 P.2d at 1300. Even though the vendor may retain title to the property,

---

1. In fact, the dissent misinterprets the parties' intent. The parties clearly intended to convey unencumbered title to the land. They certainly did not intend that after they entered into the contract and after payments were made, the vendor's judgment creditors could obtain and execute on the vendee's property to the extent the contract was executory.

that title is effectively held for the benefit of the vendee, to whom it will pass if the contract is carried out. As stated in *Willson*, "the transfer of legal title and record title [is] dependent only upon the acts and conduct of the buyer." *Id.* In short, the mere retention of title of land subject to a land sale contract does not amount to ownership of real property for purposes of § 78–22–1.

Policy concerns also dictate this result. If a judgment lien could attach to the vendor's interest in an executory land contract, the vendee would be forced to make payments at his or her peril, risking the chance that a subsequent judgment has been docketed after execution of the contract. For example, a vendee who has paid the entire purchase price could still be subject to an execution sale on the purchased property if a judgment was docketed after the contract had been entered into but before all the payments had been made. Because a judgment which has not yet been docketed cannot be uncovered by a title search, such a search can provide no protection to the vendee at the time the contract is entered into. Instead, the vendee would be forced to do a title search before each payment. Even if a judgment lien were discovered in this way, the vendee would be forced to choose whether to pay the vendor or the judgment creditor, thereby risking the possibility of having to pay twice.[2] Therefore, the position which the Clements urge this Court to adopt would make real estate contracts impracticable as an alternative to conventional financing, harming those who are poor credit risks and who are unable to obtain other financing.

However, the Clements also argue that if this Court does not rule that a judgment lien attaches to the debtor's interest in the land contract at the time the judgment is docketed, the Court should at least rule that the lien attaches at the time the vendee has notice of the lien. The Clements assert that the Cannefaxes had notice of the lien at the time they purchased the property from Hodge and that the property is therefore subject to the lien. This contention would require us to rewrite § 78–22–1, which provides that the lien will attach to the property from the time the judgment is docketed. Nothing in the statute supports this construction. Furthermore, the stipulated facts would not support the Clements' argument. The settlement agent did not discover the judgment until after the closing. The judgment debtors then transferred title to Hodge before the discovery of the judgment. Therefore, there was nothing to which the lien could attach. Hodge's transfer of title to the Cannefaxes was therefore also free of the lien.

Our holding does not "place insufficient value in the need to efficiently enforce judgments," as the dissent in the court of appeals argues. *Cannefax*, 786 P.2d at 1389. The need to enforce judgments is not so great that a lien must attach to property in the process of being transferred and to which the vendor's rights are contractually limited. This theory not only places undue emphasis on the method of financing chosen by the contracting parties, but it also unfairly allocates risk to the vendee. This holding does not prevent the judgment creditor from reaching the vendor's interest in the property, either by garnishing payments as they are made or perhaps by executing on the vendor's interest in the contract.[3]

For the above reasons, we hold that the vendor's interest in property subject to an executory real estate contract is not real property for purposes of § 78–22–1 and, therefore, that the judgment creditor's lien

---

**2.** Another alternative would be to file an interpleader action, allowing a court to determine who is entitled to the payments. This alternative is both costly and time-consuming.

**3.** Some courts have held, and, it would seem, with sound reason, that the vendor's judgment creditors acquire no lien as against the purchaser even though the purchase price is un-paid and the purchaser knows of the judgment. This works no injustice upon the creditors, who may proceed by garnishment to reach the purchase money or by bill for equitable execution to reach both purchase money and vendor's lien.
III *American Law of Property* § 11.29, at 86 (A. Casner ed. 1952).

did not attach to the vendor's interest. The decision of the court of appeals is affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.