2000 UT 9

**CAPITAL ASSETS FINANCIAL SERVICES, Plaintiff and Petitioner,**

v.

**Garlon J. MAXWELL, Dean R. Lindsay, Val B. Johnson and Janae Peterson a.k.a. Janae Lott, Defendants and Respondents.**

No. 980222.

Supreme Court of Utah.

Jan. 14, 2000.

**202** ■

Bruce A. Maak, Salt Lake City, for plaintiff.

Kent B. Linebaugh, Stephen R. Sloan, Salt Lake City, for defendants.

STEWART, Justice:

¶ 1 This case, which we originally transferred over to the Utah Court of Appeals, is here on certiorari from a decision by that court, *Capital Assets Financial Services v. Lindsay*, 956 P.2d 1090 (Utah Ct.App.1998). The Court of Appeals reversed the district court's grant of summary judgment in favor of Capital Assets Financial Services ("Capital Assets"). We affirm.

¶ 2 The facts of the case are undisputed. In May 1994, Dean R. Lindsay obtained a default judgment against R. Craig Christensen in Utah County. Under Utah Code Ann. § 78–22–1(2), that judgment became "a lien upon [Christensen's] real property ... owned or acquired during the existence of the judgment, located in the county in which the judgment is entered." Utah Code Ann. § 78–22–1(2) (1996).

¶ 3 In late 1994, Christensen sought a loan from Capital Assets. Capital Assets required collateral to secure the loan, and Christensen asked a friend, Larry Peterson, whether he or a family member could make

real estate available as security. In January 1995, Peterson's daughter, Janae Peterson Lott, gave Christensen a quitclaim deed for real property she owned in fee in Utah County. There is no dispute that on the date she executed the quitclaim deed, she was the fee title holder. According to uncontested affidavits from Lott, Peterson, and Christensen, Christensen was to use the property to obtain a loan from Capital Assets and then reconvey the property to Lott. Christensen and Lott never intended that Christensen would fully own the property.

¶ 4 Subsequently, Christensen delivered a trust deed for the property dated January 17, 1995, to Capital Assets. Under the trust deed, Capital Assets was the named beneficiary and the trustee had the power to sell the property for the benefit of Capital Assets if Christensen defaulted on the loan. *See* Utah Code Ann. § 57–1–23 (1994). Lott's quitclaim deed to Christensen and Christensen's trust deed in favor of Capital Assets were both recorded January 18, 1995. On April 25, 1995, Christensen reconveyed the property to Lott by warranty deed. Lindsay sought to execute on his judgment lien by sheriff's sale on December 13, 1995.

¶ 5 Capital Assets sued Lindsay, Lott, and two other judgment lienholders to settle the order of lien priority on the property.[1] Capital Assets moved for summary judgment based on affidavits from Lott, Peterson, and Christensen, which stated that, despite Lott's absolute quitclaim deed of the property to Christensen, Lott and Christensen only intended that Christensen use the property as collateral.

¶ 6 The district court granted summary judgment to Capital Assets for two reasons. First, the court ruled that the affidavits were admissible to show the intent of the parties as to the quitclaim deed. Second, based on the affidavits and Christensen's reconveyance of the property to Lott, the court ruled that the sole purpose of the quitclaim deed was to provide Christensen collateral for the purpose of obtaining a loan. After obtaining the loan, Christensen was obligated to return his interest in the property to Lott. In short, the

---

1. Lindsay and Capital Assets are the only parties before this Court.

court held that Christensen had only a temporary, limited interest in the property and that a judgment lien could not attach thereto.

¶ 7 The Court of Appeals reversed the trial court's summary judgment and held that Christensen's interest was subject to the judgment lien. The court stated:

> In giving Christensen a quitclaim deed to her property, Lott intended to transfer enough ownership to Christensen to allow him to obtain financing by offering the property as security for a loan. Lott intended that Christensen have the authority to transfer to Capital Assets the power to sell the land for an unpaid debt. This degree of ownership is sufficient for a judgment debtor to acquire the power to possess by levy, or sell by foreclosure, the real property to satisfy the unpaid judgment. . . . Under the circumstances so described, the judgment liens are prior and superior to the interest conveyed by the trust deed.

*Capital Assets*, 956 P.2d at 1096.

¶ 8 We issued a writ of certiorari to review that ruling. On certiorari, we review the decision of the Court of Appeals for correctness. *See Bear River Mut. Ins. Co. v. Wall*, 978 P.2d 460, 461 (Utah 1999).

¶ 9 In this Court, Capital Assets argues that the Court of Appeals' decision is wrong because (1) a judgment lien attaches only to a judgment debtor's beneficial interest in property, (2) Christensen did not possess a beneficial interest because he held the property for the limited purpose of securing his loan and therefore had only a bare legal title, and (3) the decision is unfair.

¶ 10 It is axiomatic that "a judgment lien has no greater dignity in property law than the nature of the property interest to which it attaches." *Butler v. Wilkinson*, 740 P.2d 1244, 1257 (Utah 1987). There is no dispute that Christensen held an interest in the property during the time Lindsay had a judgment lien against whatever real property interests Christensen had in the county. Lott's quitclaim, on its face, conveyed all her rights, title, and interest in the property to Christensen with the intent, according to extrinsic evidence, that he have an interest sufficient to convey a trust deed to Capital Assets. On the face of it, that interest is "real property" under section 78–22–1, the judgment lien statute. Therefore, Christensen had an interest in the property at least "to the degree necessary to convey a trust deed interest to Capital Assets."[2] *See Capital Assets*, 956 P.2d at 1094. That is what Lott intended in quitclaiming to Christensen.

¶ 11 A trust deed is

> a deed . . . *conveying real property* to a trustee in trust to secure the performance of an obligation of the trustor or other person named in the deed to a beneficiary.
>
> A trust deed is similar to a mortgage in that it is given as security for the performance of an obligation. However, a trust deed is a conveyance by which title to the trust property passes to the trustee. *Upon default, the trustee has power to sell the property to satisfy the trustor's debt to the beneficiary.*

*First Sec. Bank v. Banberry Crossing*, 780 P.2d 1253, 1256 (Utah 1989) (emphasis added) (internal quotation marks and footnotes omitted); *see also* Utah Code Ann. §§ 57–1–19 to –36 (1994).

¶ 12 Thus, a trust deed is intended to convey some kind of title to real property.[3] Of necessity, it conveys more than

---

2. The Court of Appeals agreed with the district court that the affidavits, to the degree they alleged facts, not law, were properly admissible to show that Lott and Christensen intended that Christensen would have ownership in the property only to the extent needed to obtain a loan, i.e., convey a trust deed interest to Capital Assets. *See Capital Assets*, 956 P.2d at 1094. Neither party has asked the Court to review this holding; therefore, the Court of Appeals' decision on that point stands.

3. The trust deed that Christensen conveyed to Capital Assets is consistent with the notion that a trust deed conveys title to property. That deed indicates:

> Borrower [Christensen] irrevocably grants *and conveys* to Trustee, in trust, with power of sale, the following described Property located in UTAH County, Utah. . . .
>
> . . . .
>
> BORROWER COVENANTS *that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property*

"bare legal title" to land because the point of the deed is to allow the sale of the property upon default to satisfy the underlying obligation. *See* Utah Code Ann. § 57–1–23 (1994). Christensen's trust deed is conceded to be valid. Indeed, Christensen and Capital Assets admitted Christensen's beneficial interest in the property when they executed the trust deed. The trust deed states:

> Borrower [Christensen] irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property....
>
> ....
>
> BORROWER COVENANTS that Borrower *is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property* ....

Capital Assets would not have accepted the trust deed as security if it had not agreed that Christensen held the property interest asserted therein. It follows that the trustor in this case necessarily possessed sufficient fee interest in the property to sell it under certain circumstances. Otherwise, he could not have conveyed that right to the beneficiary.

¶ 13   In short, Lott quitclaimed her interest in the property to Christensen to enable him to create a trust deed. Therefore, as a matter of law and logic, Christensen held a fee interest in the property sufficient to allow him to sell it.

> and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
> ....
> ... Reconveyance. Upon payment of all sums secured by this Security Instrument, *Lender shall request Trustee to reconvey the Property* and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. *Trustee shall reconvey the Property* without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

4.   Capital Assets argues that it is possible to possess title sufficient to create an encumbrance on property and still not possess an interest to which a judgment lien can attach. It analogizes

## I.   REQUIRED INTEREST FOR JUDGMENT LIEN TO ATTACH

¶ 14   The judgment lien statute states, "the entry of judgment by a district court is a lien upon the real property of the judgment debtor, not exempt from execution, owned or acquired during the existence of the judgment, located in the county in which the judgment is entered." Utah Code Ann. § 78–22–1(2) (1996). The real estate title of the Code defines "real property" as "any right, title, estate, or interest in land." *Id.* § 57–1–1(3).

■   ¶ 15   For purposes of section 78–22–1, a judgment lien attaches to a debtor's beneficial and equitable property interests, *see, e.g., Butler v. Wilkinson,* 740 P.2d 1244 (Utah 1987), even if the debtor has no record title. *See Utah Coop. Ass'n v. White Distrib. & Supply Co.,* 120 Utah 603, 237 P.2d 262 (1951) *rev'd on other grounds,* 2 Utah 2d 391, 275 P.2d 687 (1954). Once a judgment lien attaches, a judgment creditor may levy execution on the property or foreclose on the lien if called upon to defend against an action to cancel the lien interest. *See Free v. Farnworth,* 112 Utah 410, 188 P.2d 731 (1948). However, a judgment lien will not attach to a debtor's "bare legal title" in property because such a debtor holds no equitable or beneficial interest in the land. *See, e.g., Belnap v. Blain,* 575 P.2d 696 (Utah 1978). For example, a judgment lien will not attach to a vendor's interest in a land sale contract.[4]

this case to *Cannefax v. Clement,* 818 P.2d 546 (Utah 1991), in which the Court held that a judgment lien could not attach to a vendor's interest in a land sale contract. *See id.* at 549. The holding in *Cannefax* hinged on the concept of equitable conversion, which "transform[s] a vendor's interest in a land sale contract from a real property interest into a personal property interest" as the vendee pays the installments on the contract. *See id.* at 548. The Court stated that "the vendor's true interest is in receiving the unpaid amount on the contract, an interest more akin to personalty than to realty." *Id.* at 549. Equitable conversion, however, does not apply in this situation, in which Christensen conveyed a trust deed to Capital Assets. Christensen's interest in the property was not personalty; it was real property, as a trust deed is a "[t]ransfer[] in trust of real property." Utah Code Ann. § 57–1–20. Since that interest was realty, not personalty, a judgment lien could attach to it.

*See Cannefax v. Clement*, 818 P.2d 546, 549–50 (Utah 1991) (stating that the vendor holds title for the benefit of the vendee and that, based on equitable conversion, vendor's real interest is in personalty, not realty). Nor will a judgment lien attach to an agent's or trustee's interest in property.[5] *See Barlow Soc'y v. Commercial Sec. Bank*, 723 P.2d 398, 401 (Utah 1986)(stating that one holds bare legal title if one is "the trustee of an express, constructive, or resulting trust, or an agent, or mere conduit for the transfer [of property] to the true owner"). None of these examples applies in fact or by analogy to Christensen. He was not a vendor in a land sale contract, nor was he a trustee or an agent under the facts of this case.[6]

¶ 16  Nevertheless, Capital Assets asserts that Christensen's interest amounted to "bare legal title," to which a judgment lien could not attach. They rely on dictum found in *Belnap v. Blain*, 575 P.2d 696 (Utah 1978), to support their argument. In *Belnap*, a plurality quoted the following language from *Freeman on Judgments* but stated that it was inapplicable to the case:

"[W]henever one holds the naked legal title, having no beneficial interest, there is nothing to which the judgment lien can attach, and a sale under execution to a purchaser with notice is inoperative, and does not even convey the legal title. Hence when a grantee is a mere conduit, as where he purchases property in his name as the agent of another, with the latter's funds, and subsequently conveys to him, there is no interest to which a judgment lien can attach. The same result arises when title is placed in the name of a person so that he may sell it and pay the proceeds to the owner, *or solely to enable him to procure a loan thereon, and after procuring the loan, he reconveys to his grantor . . . .*"

*Id.* at 699 (emphasis added) (quoting 2 *Freeman on Judgments* § 956, at 2010–11 (5th ed.1925)). Capital Assets relies heavily on this language, citing the emphasized portion as dispositive in this case.

¶ 17  We have never adopted as Utah law the specific *Belnap* dictum at issue here.[7] We decline to do so now. There is a significant difference between the type of bare legal title possessed by an agent or trustee and the beneficial interest that Christensen *undisputably* possessed here. Agents and trustees have no direct beneficial interest in the property to which they hold title. Their title is held purely for the benefit of another. In the instant case, Christensen received from Lott more than bare legal title. The quitclaim deed was consistent with passing a fee interest and the intent of the parties was to allow Christensen to use the property as security for his own benefit. To hold that Christensen's interest was a non-beneficial, "bare legal title" would be inconsistent with chain of title and the intent of the parties.

## II.  EQUITABLE CONSIDERATIONS

¶ 18  Finally, Capital Assets argues it is manifestly unfair to Lott and Capital

---

5.  An agent may hold title to property after purchasing it, or before selling it, on behalf of the actual owner. *See, e.g., Zenda Mining & Milling Co. v. Tiffin*, 11 Cal.App. 62, 104 P. 10 (1909); *Wheeler v. Nelson*, 130 Minn. 365, 153 N.W. 861 (1915); *Cresswell v. McCaig*, 11 Neb. 222, 9 N.W. 52 (1881). Also, trustees hold title in the res of a trust in their names, but do so on behalf of the trust beneficiaries, not themselves. *See, e.g., Riverdale Mining Co. v. Wicks*, 14 Cal.App. 526, 112 P. 896 (1910); *Fitch v. Double "U" Sales Corp.*, 212 Md. 324, 129 A.2d 93 (1957); *Brown v. Hodgman*, 124 W.Va. 136, 19 S.E.2d 910 (1942). In each of these instances, the agent or trustee appears to be the owner of the property because title is in the agent's or trustee's name; however, the actual owner is someone else, for whom the agent or trustee holds the property. *See, e.g., Riverdale Mining*, 14 Cal.App. at 535–36, 112 P. 896. If the agent or trustee were to misuse or misappropriate the property, the actual owner could sue for damages.

6.  The Court of Appeals correctly stated: "Neither Lott nor Christensen intended that Christensen act as trustee or agent . . . for Lott." *Capital Assets*, 956 P.2d at 1094. A review of the record confirms that the property was not the res of an express, constructive, or resulting trust in which Christensen was trustee. Nor was Christensen Lott's agent, since neither Lott's quitclaim deed to Christensen or those parties' affidavits indicate that he had actual or apparent authority to act on Lott's behalf.

7.  In *Barlow* we acknowledged that the same proposition advanced by plaintiffs in that case was supported by dictum in *Belnap*, but we did not base our decision in *Barlow* on the dictum.

Assets to hold that a judgment lien may attach to Christensen's property interest. It is no doubt true that the result in this case does not comport with the expectations of Lott and Capital Assets. However, with conveyances of real property, we necessarily deal with the recording act and the policies underlying it which are intended to impede fraud, to foster the alienability of real property, and to provide for predictability and integrity in real estate transactions. To that end, the intention of the parties to a transaction may be overridden by rules that promote a basic policy that, in the long run, will effectuate the intentions of most parties in most transactions. As we have stated before, "Under U.C.A., 1953, 78-22-1, a judgment automatically becomes a lien upon all nonexempt real property of the judgment debtor at the time it is docketed. [The] ... right to a judgment lien is unconditional and is not subject to alteration by a court on equitable grounds." *Taylor Nat'l, Inc. v. Jensen Bros. Constr. Co.,* 641 P.2d 150, 155 (Utah 1982). With a modicum of care, the parties could easily have accomplished their objective without any complications. For this Court to extricate them from the difficulties they have created would required us to ignore the plain meaning of the judgment lien statute.

¶ 19    Affirmed.

¶ 20    Chief Justice HOWE, Justice ZIMMERMAN, Justice RUSSON, and Judge HILDER concur in Justice STEWART's opinion.

¶ 21    Having disqualified herself, Associate Chief Justice DURHAM does not participate herein; District Judge ROBERT K. HILDER sat.

